## Case No. 5,729.

### GRAY v. SIMS et al.

### [3 Wash. C. C. 276.] [1]

Circuit Court, D. Pennsylvania. April Term, 1814.

#### MARINE INSURANCE.

1. If the trade in which a vessel is to be engaged during the voyage, be contrary to the laws of the country, or the laws of nations, a policy upon the ship equally with one on the cargo, the peculiar subject of interdiction, is void.

2. The rule, that if the policy once attaches, the right to the premium becomes indefeasible, is not without exceptions.

3. If a contract of insurance be legal when it is made, and the performance of it is rendered illegal by a subsequent law, both parties are discharged from its obligations. In such a case, the insured loses his indemnity, and the insurer his premium.

[Cited in Macon & B. R. Co. v. Stamps (Ga.) 11 S. E. 444; Statham v. New York Life Ins. Co., 45 Miss. 581.]

This was a case reserved for the opinion of the court, and is as follows:—On the 17th of December, 1810, the plaintiff underwrote a policy for 5000 dollars, on two-thirds of the brig South-Carolina, belonging to the defendants [Sims & Bethel], on a voyage at and from Philadelphia to Calcutta, and at and from thence to Philadelphia, with liberty to touch and trade at Madras, on her outward and homeward voyages. The vessel cleared out for Calcutta, from Philadelphia. and sailed on the voyage insured, in December, 1810; and at Calcutta took in a cargo of British goods, one of the defendants being her supercargo and commander on her return voyage, and with that cargo returned to the United States. On her arrival, she was seized, with her cargo, on behalf of the United States; and the forfeiture, or alleged forfeiture, was afterwards remitted to the defendants and the other owners. This action is brought, to recover the amount of the premium. The jury found a verdict for the plaintiff, subject to the opinion of the court on the above case.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

J. R. Ingersoll and Mr. Rawle objected to the plaintiff's right of recovery, upon the ground, that the voyage insured was illegal; the non-importation law being to take effect on the 2d of February, 1811, unless Great Britain should, before that day, repeal her Orders in Council. They read the acts of congress of the 1st of March, 1809 [2 Stat. 528], 1st of May, 1810 [Id. 605], and 2d of March, 1811 [Id. 651]; the president's proclamation of 19th of April, 1809, reviving trade with Great Britain; of the 2d of November, 1810, declaring that France had repealed her edicts. 1 Burrows, 341; Park, Ins. 232; Marsh. Ins. 180, 1. 72, 65–68, 74, 57; 1 Ld. Raym. 724; Roccus, note 1; Bynk. bk. 1, c. 21; 1 P. Wms. 185; 3 Ves. 373; [Mitchell v. Smith, Maybin v. Coulon, Duncanson v. McLure] 4 Dall. [4 U. S.] 269, 298, 308; Murgatroyd v. McLure [Case No. 9,943].

Mr. Binney, for plaintiff, contended, that at the time this policy was underwritten, there was no law which forbade the importation of goods from British possessions; and that consequently, the policy having once attached, no future circumstance could affect it. The policy is on the vessel only; and the conduct of the insured in taking goods on board, contrary to law, cannot exonerate him from paying the premium. He cannot make a violation of law the ground of his defence.

WASHINGTON, Circuit Justice. This case presents a question somewhat novel, from the particular circumstances of it; although it is fully within certain well-established principles of law, by which it may, without much difficulty, be decided. The question is, whether the policy was void, upon the ground, that the trade in which this vessel, during the voyage insured, was to be employed, was, or might be forbidden by law. Before arriving at the immediate decision of this question, we lay down the following positions, which, if not admitted, may easily be proved: 1. That if the commerce in which a vessel is to be engaged, during the voyage insured, be contrary to the laws of this country or to the law of nations, a policy upon the ship equally with that upon the cargo, the peculiar subject of interdiction, is void. It is true, that the insurance upon the ship, is strictly an insurance upon the voyage, which, independent of the traffic in which she is engaged, may be perfectly lawful. But, i. ﹍e traffic be forbidden by the laws of this country, the voyage, connected with such traffic, becomes on that account unlawful. The voyage is identified with the trade, for the sake of which it was undertaken; and the ship is the instrument with which the trade is carried on, and without which, the law could not be violated. The law, therefore, considers the ship, in pari delicto, with the prohibited cargo; and a policy made upon her for the voyage, equally undeserving of its aid to enforce the perform-

ance of its stipulations. In the next place, we take it for granted, that the object of this voyage, was the importation of goods from. Calcutta or Madras into the United States; because it is inconceivable, that the owner of this ship would encounter the heavy expenses of an East India voyage, without a view to profit; which could only arise by bringing home, as he in fact did, a return cargo. There is no ground for presuming, that the intention of the owner was to trade between Calcutta and Madras, or any other ports; because the voyage insured, was from Philadelphia to Calcutta and back, merely with liberty to touch and trade at Madras, on the outward and homeward voyages. Any other trading, therefore, would have deprived the insured of the protection of the policy. If the real intention of the voyage can be discovered, either by the nature of it, or by other evidence, and the object appears to be an illicit trading, the legal consequence will be the same, as if it had appeared on the face of the policy. If, then, this policy had been effected after the 2d of February, 1811, the case would have come precisely within the rule, which declares, that the law will not lend its aid to enforce the performance of a contract, made in contravention of its own regulations.

This leads immediately to the material question in this cause; does the above rule apply to the policy under consideration, the same having been underwritten a few weeks prior to the 2d of February, 1811, and before the non-importation law came into operation against Great Britain? The difference between a policy made prior to the 2d of February, 1811, and one made subsequent to it, is, that in the latter case, the subject of the contract was immediately and absolutely illegal; whereas in the former, the illegality of it depends upon a contingency. But nevertheless, the underwriter promises to the insured an indemnity against loss, upon a traffic which the laws of his country may forbid, and whether it should be forbidden or not. He engages to protect a trade, which is to be carried on in defiance of any law which may be passed to interdict it. And is this a contract which can show its face in a court of justice, whose duty it is to enforce the laws of the country?

It was contended, with great ingenuity, by the plaintiff's counsel, that at the time this policy was underwritten, the importation of goods from a British port into the United States, was lawful; and consequently, that the policy having once attached, the right of the insured to the premium became perfect, and could not be defeated by any thing ex post facto. Now, it may safely be admitted, that the importation was lawful at the time this insurance was effected; and yet it will not follow, that the policy attached; or if it did, that the right of the insurer to the premium, could, under any pos-

sible circumstance, be enforced. The importation was lawful at the time the insurance was made; and yet the contract was illegal, because it stipulated to protect a prohibited trade. It was impossible, that an importation of goods from Calcutta could be made into the United States, within the period of time which would elapse between the 17th of December, 1810, and the 2d of February, 1811; and consequently, it was to be made after the latter day; and if it should then be prohibited, still, the underwriter was bound to indemnify the insured against all risks to which he might be exposed, in making such illegal importation. The contract was illegal, because it looked to a period beyond that when the importation might be contrary to law, and engaged to protect it, although such should be the case. The policy, therefore, never did attach. Neither is it correct to lay it down as a general rule, without exception, that if the policy once attach, the right to the premium becomes indefeasible. It does so, we admit, notwithstanding any act of the insured, or of his agents. But if the contract be legal when it is made, and the performance of it is rendered illegal by a subsequent law, the parties are both of them discharged from its obligations. The insured loses his indemnity, and the insurer his premium. This is totally unlike the case of Odlin v. Pennsylvania Ins. Co. [Case No. 10,433]; because, in that, the embargo law did not forbid, but only suspended, the performance of the contract. The voyage and trade were not condemned, but merely postponed.

It was contended by the plaintiff's counsel, that the contract should be construed to protect the importation, only in case it should be lawful; but not so, if it should be forbidden by the non-importation law coming into force. This would be to set up an implied warranty on the part of the insured, to destroy the protection which the policy promises him, and for which the premium was paid. A warranty which is totally inconsistent with the express stipulations of the policy, cannot, with any propriety, be implied. The insurer, in this case, engaged to indemnify the insured against all losses which might happen to the ship on her voyage. The object, therefore, of the insured, was to be protected on that voyage at all events; and the protection was expressly and unconditionally promised by the underwriter. The supposed warranty, therefore, would be entirely contradictory to the obvious intention of both parties; and for that reason it cannot be implied. Upon the whole, we are of opinion, that the law is in favour of the defendants, and that judgment be rendered for them. Judgment for defendants.