## Case No. 3,340.

### CRAIG v. UNITED STATES INS. CO.

[1 Pet. C. C. 410.][1]

Circuit Court, D. Pennsylvania. April Term, 1817.

#### MARINE INSURANCE—WARRANTY.

1. Every warranty in a policy of insurance, whether express or implied, constitutes a condition precedent, and the assured cannot recover from the underwriters, without first averring and proving performance of such stipulations.

---

[1] [Reported by Richard Peters, Jr., Esq.]

2. Sailing under a British license, during the war between the United States and England, was illegal.

3. A contract of insurance, made on a voyage which is opposed to the common, statute or maritime laws of the country where it is effected, is void.

[Cited in Tufts v. Tufts, Case No. 14,233.]

This was an action on a policy of insurance, dated the 8th of January, 1813, on freight of ship Hibernia, at and from Norfolk to Cadiz. Four thousand dollars were underwritten by the defendants at six per cent., the freight valued at eight thousand dollars. "Property warranted free from all claims, in consequence of any restraints that may be imposed by the American government, previous to sailing. The ship has a Sidmouth license on board." The declaration stated the loss to have happened by arrest and detainment of the British squadron in Lynhaven bay, and also in Hampton Roads, whereby the voyage was broken up. The Hibernia sailed from Norfolk, with a cargo of provisions, on the voyage insured, on the 3d of February, 1813; and on the 7th, was brought to in Lynhaven bay, by the British squadron, which had but a few days previous entered the Chesapeake. The captain, who stated that he had a Sidmouth license on board when she sailed, and which continued on board all the time, went on board the admiral's ship with his papers and license, when he was informed that the Chesapeake was then blockaded and that he must return to Norfolk. The ship accordingly returned to Norfolk, and remained there until the 3d of March, when the master made another attempt to get out, but, finding the British squadron in Hampton Roads, he came to anchor, and, on the 16th he was boarded by an officer from the squadron, and again warned not to attempt to go to sea, under pain of capture and condemnation; to which effect the license was indorsed, and he was then ordered to ascend James river, to remain there; which order he complied with. The ship and cargo having been insured in New York, the plaintiff, on the 3d of April, tendered an abandonment of the ship to those insurers, and of the cargo on the 1st of April, both of which were accepted. The master received a letter from the plaintiff, dated the 20th of May, 1813, informing him of the abandonment, and directing him to govern himself by the orders of the assurers, and on the same day another letter was addressed to him by those insurers, directing him to place himself in a safe situation, and to retain the license in case of being boarded by the enemy. By a subsequent order of the same insurers, the cargo was sold at auction on the 25th of November, 1813, the ship remaining in James river.

On the 19th of April, 1813, the plaintiff offered to abandon to the defendants and claimed as for a total loss, which offer was repeated on the 26th of May, and both of

which were refused. The order of council authorising Lord Sidmouth to issue licenses, and the license granted by him, bearing date the 20th of August, 1812, to continue in force for nine months from the date, were read. The defendants offered no evidence.

The counsel for the defendants, made the following points:—First. That the restraint of the enemy at the time when the abandonment was made, was not such as to warrant the plaintiff in breaking up the voyage, and going for a total loss. The peril was not immediate. No loss had been incurred in consequence of it. The blockade, which could only operate upon neutrals, imposed no obligations upon an enemy, and consequently could no more justify an abandonment on account of the danger which would attend the attempt to prosecute the voyage, than if the sea had been covered with privateers and ships of war. Cases cited: Hadkinson v. Robinson, 3 Bos. & P. 388; Lubbock v. Rowcroft, 5 Esp. N. P. 50; Blackenhagen v. London Assur. Co., 1 Camp. 454; Forster v. Christie, 11 East, 205; Atkinson v. Ritchie, 10 East, 295, 530; Richardson v. Maine Ins. Co., 6 Mass. 102; Cook v. Essex Ins. Co., Id. 122; Amory v. Jones, Id. 318; Lee v. Gray, 7 Mass. 349; King v. Delaware Ins. Co., 6 Cranch [10 U. S.] 71, and the same case in this court; 1 Emerig. Ins. 535, 536, 502; 2 Emerig. Ins. 176. Second. By the abandonment of the vessel to the insurers, the right to the freight followed necessarily, and it became the property of those insurers. The insured, according to the uniform principle of adjustment, received from them the one month's advance of wages to the sailors, and the disbursements for three months provisions. The plaintiff, therefore, can recover nothing from the insurers on the freight. Cases cited: Leatham v. Terry, 3 Bos. & P. 479; Thompson v. Rowcroft, 4 East, 34; Sharp v. Gladstone, 7 East, 24; M'Carthy v. Abel, 5 East, 388. Third. The abandonment was too late. Fourth. The license infected the contract with illegality, and it was of course void. 1 Marsh. Ins. 31. The decisions in the cases of The Julia, The Aurora, The Hiram, and The Ariadne, in the supreme court of the United States. For the plaintiff were cited, first point, Craig v. United States Ins. Co., 6 Johns. 226. Second point, 3 Johns. 49; Livingston v. Columbia Ins. Co., 2 Condy's Marsh. Ins. 602, 608, in the notes. The counsel for defendant admitted, that in the New York courts the law was settled against him. Third point [Chesapeake Ins. Co. v. Stark] 6 Cranch [10 U. S.] 268; 15 East, 13; 4 Bin. 442. Besides, by the policy the insured cannot abandon in less than sixty days after the capture or detention, which brings the offer in this case within time, on the strictest principles.

Fifth. It was contended, that there was no evidence that there was a Sidmouth license on board, or, at all events one that would protect the property, for the following reasons: There is no evidence given of the handwriting of the lord of the council who signs the order, or of Sidmouth's handwriting. Licenses are stricti juris, and must be construed strictly, so that if it be given to one person no other can use it but as his agent. It will not protect a voyage different from that mentioned in the license. This license is granted to Thomas Taylor and others, and no title is derived down to the plaintiff. The license excepts, on the return voyage, her return to a blockaded port; it consequently excepted her egress from a blockaded port, and if so, the license was not operative in this case. Chit. Law Nat. 260, 1; 4 C. Rob. Adm. 8; Edw. Adm. 95; 2 C. Rob. Adm. 116, 162; Chit. 295; Vatt. bk. 3, c. 17, § 267; 12 East, 223; 4 C. Rob. Adm. 216, 280; 12 East, 310; Chit. 285. But admit all these difficulties removed, it was then contended, that this was not a warranty, but a mere representation. That the having of the license was a condition subsequent; and being illegal or repugnant, (if it be so) it is void. 2 Bl. Comm. 156. But to invalidate a contract on the ground of illegality, it must be repugnant to some positive municipal law, or to the moral law, which this is not. This case is not like those decided in the supreme court on the subject of licenses; as this was not to further the views of the enemy. [The Hiram] 1 Wheat. [14 U. S.] 447; [The Julia] 8 Cranch (12 U. S.) 190. The following cases were cited on the subject of the validity of the contract: Petrie v. Hannay, 3 Term R. 418, 424, 5 Term R. 466; The Vanguard, 6 C. Rob. Adm. 207; Maybin v. Coulon, 4 Dall. [4 U. S.] 298, 12 Johns. 287.

WASHINGTON, Circuit Justice, charged the jury. Some important questions have been agitated in this cause. If it were necessary to decide the first and second points which have been argued, their intrinsic difficulty, as well as our respect for the courts of our own country, which have differed from each other in their decisions upon one of the questions, would have determined us to recommend a special verdict, or an agreed case, in order that we might have an opportunity of giving to those questions a very serious examination. But we do not think it necessary at present, to give any opinion upon more than one of the questions which have been argued, and which we think will finally dispose of the cause. That question is, can the plaintiff recover upon a contract of insurance, which obliges him to sail upon the voyage insured, under a license or protection granted by the enemy of the United States? In arguing this point, the plaintiff's counsel have had a very narrow strait to navigate. Scylla on the one hand, and Charybdis on the other. If there was no Sidmouth license on board, they had reason to apprehend being wrecked on the warranty which requires them to have it. If they had it on board, there was equal danger of a

similar fate, on the ground of its infecting the voyage with illegality. If, in this perilous voyage they have failed of success, it is but justice to them to say, that it has not arisen from want of skill in themselves.

The plaintiff's counsel, in the first place deny that there was a Sidmouth license on board, because it is said that the license which they have produced, as that which the captain has sworn he had on board, is not proved to be in the handwriting of Lord Sidmouth. If this be in fact the case, upon the principle that that which does not appear, is to be considered as not existing, then the plaintiff has put himself out of court; inasmuch as he bound himself to have such a license on board, and he must establish that fact before he can expect to recover. But, if the non-existence of such a paper could benefit the plaintiff, instead of destroying his right of recovery, it would not be competent to him to deny that there was such a paper on board, in the face of his own declaration which avers the contrary in the most direct terms. But, admitting there was on board a paper purporting to be a Sidmouth license, it is then contended that it was altogether inoperative as a protection, inasmuch as it was granted to one Taylor and others, and there is no evidence to connect the plaintiff with Taylor, or to show how he derived a right to possess and use it; that as licenses are to be construed strictly, and will protect no voyage unless it be that mentioned in it, and conducted by the party in whose favour it is granted, or by his agents, this license was, in the hands of the plaintiff, of no more consequence than a piece of blank paper. The general principle, as laid down, is correct, and if it were important for the interests of the defendants to urge this argument against the validity of this license, it might come from them with some force, and certainly with no bad grace. But, it appears to come very awkwardly from the plaintiff who had it on board his vessel, who used it successfully for the purpose of protecting his property from capture, and now produces it in court. That he became possessed of it in a proper and legal manner, he ought to be the last man in the world to question.

But, admit the whole force of the argument, then, as in the former case, the plaintiff has put himself out of court; since his warranty, construed upon the foundation of that good faith which emphatically governs contracts of insurance, bound him to have on board, not merely a paper purporting to be a Sidmouth license, but a real operative license to the purpose of protecting his property against hostile capture. This was necessarily implied in the stipulation, as is incontestably proved by the peace premium, for which the defendants were contented to take the risk. To attempt then, to shift them off with a blank piece of paper which would afford no protection against British capture, would savour very strongly of a fraud, which could not receive the countenance of any court. But this whole argument proceeds upon the mistaken supposition, that it is the having of the license on board which invalidates the contract, whereas it is the stipulation in the contract, obliging the insured to have it, which produces this effect, if on the further examination of this question, it should appear that the license rendered the voyage illegal. If, notwithstanding the contract, there be in fact no license on board, then the voyage would not be illegal, although the plaintiff could not recover because he has not complied with his contract. If he has it on board, he gets rid of that objection, but then he exposes himself to the objection, that his voyage is illegal. But, whether he in fact had it on board or not, does in no respect remove the objection to the validity of the contract, which is bottomed upon a stipulation to have it.

But it is contended, that this warranty constitutes a condition subsequent, and therefore, if it be to do an illegal act, it is void, but the other parts of the contract continue in force. It is said to be a condition subsequent, because the license could not operate until the vessel got to sea, which was subsequent to the inception of the voyage when she broke ground. Now admitting that the fact is so, which is certainly going a great way, still the legal consequences would not follow. If it did, then warranties to sail with convoy would be in almost every case conditions subsequent, as the insured very seldom joins the convoy at the place where the inception of the voyage takes place. But it is unquestionable, that every warranty in a policy, whether they be express or implied, constitutes a condition precedent. Not precedent in point of time to the inception of the voyage, but to the plaintiff's right of recovery. That is, he cannot in any instance where he has entered into a warranty, recover against the underwriters without first averring and proving performance of those stipulations.

The next enquiry is, was this an illegal voyage? This question is settled, at least in the courts of the United States, beyond all controversy. The cases of The Julia, 8 Cranch [12 U. S.] 181, The Aurora, Id. 203, The Hiram, 1 Wheat. [14 U. S.] 440, and The Ariadne, 2 Wheat. [15 U. S.] 143, proceed and are decided on that ground. This case is in no respect distinguishable from those, and particularly from that of The Ariadne; certainly it is not in principle. If, then, this voyage was illegal, what is the consequence as to the contract? The rule is, that a contract of insurance made on a voyage which is opposed to the common, statute, or maritime laws of the country, where it is effected, is void. In other words, the courts of that country will assist neither of the parties to enforce it, or to recover damages against

the other for a breach of it. The plaintiff, whether he be the assured to recover the sum insured, or the insurer to recover back the loss in case he has paid it, is turned out of court; not because he is more in fault than the defendants, for they are in pari delicto, but because he is the plaintiff, and the defendant retains what he has received, and repels the claims of the plaintiff altogether, from the adventitious circumstance, that he is the defendant, and potior est conditio possidentis. I wish it to be understood, that I mean not to impute crime, or even intentional impropriety, to either of these parties. I have no doubt that they acted with the most perfect innocence, mistaking the law, as many eminent legal characters did, at a later period than that when this contract was entered into.

Upon the whole, it is the opinion of the court that the plaintiff is not entitled to recover in this action.

The plaintiff suffered a nonsuit.