FLORIDA CONITHAN v. ROYAL INSURANCE COMPANY.

[45 South., 361.]

INSURANCE. *Fire policy. Bawdy house furniture.*

> A policy of fire insurance issued to the keeper of a bawdy house upon furniture used therein is not void because of the unlawful business conducted there.

FROM the circuit court of Leflore county.

HON. SIDNEY M. SMITH, Judge.

Mrs. Conithan, appellant, was plaintiff in the court below; the insurance company, appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, plaintiff appealed to the supreme court.

The suit was on a fire insurance policy upon plaintiff's furniture destroyed by fire. The opinion of the court states the facts.

*Pollard & Hamner,* for appellant.

All discussion of this case should be prefaced by the rules of law that forfeitures are looked on with disfavor by the courts, and further, that insurance contracts are to be construed most strongly against the insurer. *Boyd* v. *Miss. Home Ins. Co.,* 75 Miss., 47; *Comm. Fire Ins. Co.* v. *Jeary,* 51 L. R. A., 698; *Rogers* v. *Phœnix Ins. Co.,* 121 Ind., 570; *Holly* v. *Mut. Life Ins. Co.,* 105 N. Y., 437.

With the above principles in mind, the court will note that the principal defense set up by the insurance company as an excuse for its alleged non-liability under the policy, is, that the appellant was conducting a house of ill fame at the time the policy was issued, and that the subject of the insurance related to the carrying on of a house of ill fame; and that the contract was therefore void. In answer to this we say that where a con-

tract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it; but if the contract be entirely disconnected from the illegal or immoral act, and is founded on a new consideration, it is not affected by the act although it was known to the party to whom the promise was made and although he was the contriver and conductor of the illegal act. *Armstrong* v. *Toler,* 6 Law Ed., 468; *Boardman* v. *Merrimac Ins. Co.,* 62 Mass., 583; *Carrigan* v. *Lycoming Fire Ins. Co.,* 53 Vt., 418; 38 Am. St. Rep., 687; *Ocean Ins. Co.* v. *Polleys,* 10 Law. Ed. (U. S.), 105.

The issuance of the policy to appellant had nothing whatever to do with the success or failure of the carrying on of appellant's business, and was founded on an absolutely new consideration, to-wit, the payment to appellee of the insurance premium. The legality or illegality of the business of the insured was too remotely connected with the policy to affect it in any way. *Holt* v. *Barton,* 42 Miss., 714; *Armstrong* v. *Bank,* 33 Law Ed. (U. S.), 601; *Lee* v. *Cassin,* 61 Ala., 316; *Miller* v. *Gould,* 38 Ga., 472; *Phœnix Ins. Co.* v. *Clay,* 101 Ga., 332.

In the well-analyzed case of *Anheuser Busch Brewing Assn.* v. *Mason,* 44 Minn., 321; 9 L. R. A., 508, a recovery was allowed to a liquor dealer for beer sold to the keeper of a house of ill fame even though the seller knew that it was to be used in the brothel by the inmates, the seller doing nothing to aid the unlawful business. In the case of *Tracey* v. *Talmage,* 14 N. Y., 175; 67 Am. Dec., 139, where a banking company bought bonds to be used in illegal transactions, the vendor could recover even though he knew of the unlawful business, provided he did nothing to aid it. In the case of *Armfield* v. *Tate,* 29 N. C., 258, the supreme court of North Carolina held that a vendor's knowledge that property sold was to be used by the purchaser as a residence for his kept mistress does not defeat the right to recover the purchase price. In the case of *Bishop* v. *Honey,* 34 Tex., 252, it was held that knowledge of a

mechanic that a house which he builds is to be used as a house of ill fame will not prevent recovery for his work. See also *Hubbard* v. *Moore,* 24 La. Ann., 591; 12 Law Rep., 128, holding that the seller of furniture is not prevented from recovering the purchase price because of knowledge on his part that it was to be used in a bawdy house. The mere knowledge of the seller of clothing that the purchaser is a prostitute will not defeat his recovery of the purchase price unless he expects to be paid out of the profits of her prostitution or does something in aid of it. *Bowry* v. *Bennett,* 1 Camp., 348. See also 15 L. R. A., 835.

The case of *Holt* v. *Barton,* 42 Miss., 711, cited above, lays down this rule: "To render a contract illegal, it must grow immediately out of and be immediately connected with the original illegal or immoral act and not founded on a new consideration. A subsequent sale of the subject of an illegal act, after the original act is consummated and a new contract founded thereon, will be valid." And see *Green* v. *Sizer,* 40 Miss., 530.

The policy in the case at bar had nothing to do with the illegal business of the appellant, the plaintiff below. Could it have made any difference in her business if the policy had never been written? In every case where contracts have been held void because made in an illegal business, they have been so connected with the illegal or immoral nature and purpose of the business as to be inseparable from it. *Sons, etc., of Jacob* v. *Allen,* 76 Miss., 326. Joyce on Insurance, vol. 3, § 2536, 2507; *Behler, Adm'r* v. *Ins. Co.,* 68 Ind., 347.

In no sense do we defend the running of a bawdy house. But we contend that property rights must be maintained. The state recognizes property rights of this class; and such property is taxed just as is other property, and is made to bear its proportionate burden of all legal assessments. The difference between the case at bar and the *Pollard case,* 63 Miss., 244,

cited by learned counsel for appellee, is, that the subject of insurance in the *Pollard case* was a stock of goods; the handling of these goods constituted the business, *was* the business, in fact. The building and shelves and counters were merely used in the business, and certainly a policy of insurance upon them would have been collectible. In the instant case the business was prostitution, and the furniture in the rooms was in the same attitude as the shelving and counters above mentioned. Moreover, the contract in the *Pollard case* was void under a highly penal statute, and, as shown in the second appeal, 63 Miss., 641, when the cause of the invalidity of the contract was removed, the policy was held to be enforceable.

*Lomax & Tyson,* on the same side.

In the insurance company's fourth special plea to the declaration it sets up that the house where the furniture was located was rated as a dwelling house, at the time of the insurance. The local agent of the company, however, admitted in his testimony that he went down to the house and examined it, before writing the risk, and became aware that it was not a dwelling house in the commonly accepted term. He in fact testified that he knew the owner was a woman, and that the house was used for prostitution. The knowledge of the agent is the knowledge of the insurance company, and, since there was no fraud worked upon the agent, the company is estopped to deny liability.

Delivery of a policy with knowledge of the facts which render it void in its inception is a waiver of the provision avoiding the policy. 3 Cooley's Brief on Insurance, pp. 2640–2641; 60 Miss., 302; 28 Neb., 864.

*McLaurin, Armistead & Brien,* and *Tim E. Cooper,* for appellee.

The contract of insurance was in reference to and in aid of an illegal and immoral business, and was void as being opposed to public policy.

The books are full of nice distinctions as to what contracts are collateral to, and so disconnected from, the illegal business or enterprise, as to be enforceable, notwithstanding its illegality. In most of the cases the actions have been brought by sellers against buyers who were engaged in the illegal business, and the defense has been made by the violator of the law that his own business (and not the business of the seller) was illegal. In such cases the courts have rather leaned toward the plaintiff, and have held that if the property sold might have been put to a legitimate use, the seller was entitled to the benefit of the presumption that they would be so used, and that the mere possibility or probability that they would be used in the illegal business did not preclude recovery for their price. But even where the suit is by the seller, if he does anything in aid of the unlawful enterprise, as, for instance, by so packing intoxicating liquor as to evade detection, he cannot recover. The note to the case of *Graves* v. *Hopkins* (Mass.), 15 L. R. A., 834, contains most if not all of the cases on the subject referred to by appellants, and a sufficient number on both sides of the controverted point to fully advise the court in the premises.

There is no need, however, to examine the authorities of other states, because the question is illuminated fully by our own decisions. It must certainly be conceded by opposing counsel that where the contract sued on is directly connected with and in aid or protection of the illegal business, no recovery can be had.

Note the property that was sought to be insured. It was furniture for a bawdy house, situated in the five rooms of a house kept by a negress, a brothel of the lowest type for the use of abandoned white profligates. The insurance was of such property used absolutely for an illegal and immoral purpose. Was the insurance contract connected with and in aid of such unlawful business? The question is settled in this state by the well considered opinion of Campbell, J., in *Pollard* v. *Insurance Co.,* 63 Miss., 244. There this court asks the ques-

tion, " Is a policy of insurance on a stock of goods in a store carried on in violation of law a contract in reference to the business ? " And it answers this as follows: " It is made to cover such goods as may constitute the stock when the loss occurs. It is a contract for indemnity against loss. It grows out of the business. It pertains to it and concerns it. It pertains to it, and it is made for its success. . . . Shall it be said that the unlicensed dealer is incapacitated to make an enforceable contract to buy or sell goods, but he may make one for their preservation or for indemnity against their loss ? That although they are being used for profit in an unlawful business, and are kept for that purpose, a lawful contract may be made for indemnity against their loss by a casualty incident to the business ? Although no enforceable contract may be made for their sale, one may be made for their conservation or replacement in order that they may continue to be dealt with in violation of law ? To permit the unlicensed dealer to stipulate for protection against loss of goods by a casualty incident to the business would be to allow him to acquire rights by contract from an illegal business in the face of the statute which denies it. . . . He cannot claim the benefit of any contract made in its prosecution, growing out of it, and having relation to it."

It is true that the *Pollard case* was under a statute, as were also the cases of *Brian* v. *Williamson,* 7 How. (Miss.), 14; *Wooten* v. *Miller,* 7 Smed. & M., 380; and *Deans* v. *McLendon,* 30 Miss., 343. But in *Woodson* v. *Hopkins,* 85 Miss., 171, WHITFIELD, C. J., both in the opinion in chief and in response to the suggestion of error, shows that contracts violative of public policy are as much unenforceable as though condemned by positive statutes. In that case the appellant sought to take shelter under the statute of usury which he conceded he had violated, and claimed that the condemnation of the statute limited the extent of the forfeiture which the court could inflict. But this court held that the appellant had not only violated

the statute against usury, but had entered into a business in which the extortion of the needy reached the limit of plundering and robbery of his unhappy victims. And the court said that, outside of and beyond the statute against usury, there existed a public policy which the appellant had violated, and for which he was repelled from access to the courts.

That the contract of insurance in protection of an unlawful business, if made unlawful by statute, is unenforceable, is settled by the *Pollard case, supra;* and that a business unlawful because opposed to public policy is as unlawful as though declared so by statute, is settled by the *Hopkins case, supra.* One or the other of these decisions must be overruled before the appellant in the present case at bar can have any standing in the courts of this state.

Learned counsel for appellant cite many cases holding that the insurance company is estopped to set up against the policy facts of which the agent was informed when the policy was issued. It is to be observed that all these cases relate to policies which might lawfully be issued and to contracts which might lawfully be made; and to the mere waiving of objections which otherwise might have been taken to contracts; and to valid contracts condemned neither by statute nor by public policy. But, in the nature of things, there can be no estoppel in relation to a contract against public policy. *Hickey* v. *Hinsdale,* 12 Mich., 99; *Smith* v. *Smith,* 62 Mo. App., 596; *Sarton* v. *Dodge,* 57 Barb., 84; *Sherman* v. *Eakin,* 47 Ark., 351; *Langan* v. *Sankey,* 54 Ia., 52; *Tate* v. *Building Ass'n,* 97 Va., 74; *Hoffman* v. *McMullen,* 83 Fed. Rep., 384. No one can estop himself from proving facts which will show a contract to be opposed to public policy. Greenhood on Pub. Pol., rule 126, p. 115. Otherwise, the public law and policy would be at the mercy of individual interests and caprice. *In re Comstock,* 3 Sawyer, 228.

Argued orally by *W. N. Hamner,* for appellant, and by *Tim E. Cooper,* for appellee.

MAYES, J., delivered the opinion of the court.

This suit was instituted by Florida Conithan against the Royal Insurance Company for the purpose of recovering the value of household furniture belonging to her which had been destroyed by fire. The declaration alleges that on the 26th day of March, 1906, in consideration of $16 premium paid to the insurance company by appellant, it executed and delivered to her a fire insurance policy for the sum of $600, wherein the company insured and promised to protect the property named in the policy from all damage and loss by fire. This policy was to run for a period of three years from its date; that is to say, from March 26, 1906, to March 26, 1909, at noon. The declaration further alleges that on the 7th day of June, 1906, while the policy was in full force, the property insured was wholly destroyed by fire. This fact was communicated to the insurance company, and a request made for blanks to make proof of loss within the time provided by the terms of the policy. The insurance company refused to furnish the blank proofs of loss as requested, and refused to pay the amount due her for the loss, whereupon she brought suit for the sum of $600, the amount insured for under the policy. It may be conceded that on the trial of this case it was shown that the plaintiff was a keeper of a bawdy house, and that the property insured was kept by her in this bawdy house and used for purposes of prostitution. There is no stipulation in the policy which prohibits such use of this property as it was being put to at the time. After the proof was all in, the court gave a peremptory instruction to find for the insurance company.

In our judgment, the only question presented by this record is whether or not this contract of insurance is void, as against public policy, because placed upon property and household furniture used by the insured in a bawdy house. Was this contract in aid of an illegal and immoral business so directly as to make the contract void? It is impossible to lay down any exact rule by which it may always be determined whether

a contract is collateral to and so disconnected from an illegal and immoral business as to make it enforceable, when it would not be enforceable, if it was directly in aid of, or in the advancement or encouragement of, acts in violation of the law. In 19 Cyc., p. 722, it is stated: "If the direct purpose of the contract is to effect, advance, or encourage acts in violation of law, it is settled that the policy is void. But it is equally well settled that a mere illegal use made of the premises, there being no provision of the policy applicable, and no design by means of insurance to promote an unlawful enterprise, does not affect the right of the insured to recover."

The main case relied upon by counsel for appellee is the case of *Pollard* v. *Insurance Co.,* 63 Miss., 244; 56 Am. Rep., 805. We do not think that case can be relied upon as authority for holding the contract of insurance in this case as against public policy or as in violation of the law. In the *Pollard case, supra,* the question arose under a statute of the state making provision for the collection of its revenue. One of the provisions of that statute was that a person exercising any of the privileges enumerated should pay a privilege tax. Mrs. Pollard was a merchant in Okolona, and entered into a contract of insurance against loss by fire with the insurance company. Subsequently her stock of goods was destroyed, and she made proof of loss and undertook to collect her insurance. The insurance company set up the defense that the contract was void because the plaintiff was doing business in violation of law. The section of the statute in reference to which privilege taxes were required to be paid provided that, if any person shall exercise any of the privileges enumerated in the chapter "without first paying the price and procuring a license as required, they shall, on conviction, be fined," etc., "or imprisoned," etc., "or both," etc., "and all contracts made with any person who shall violate this act in reference to the business carried on in disregard of this law, shall be null and void so far only as such person shall base any claim upon them, and no suit shall be maintainable

in favor of such person on any such contract," etc. On these facts and under this statute the court held that a contract of insurance to protect the goods used in the business conducted in violation of the revenue laws was a contract " in reference to the business carried on in disregard of the law," and therefore void. We do not think the principle announced by this case can be invoked to defeat the contract of insurance in the case before the court. The two cases are quite distinct. The language of the statute in the *Pollard case* was broad, and it prohibited any rights to accrue to any person violating the privilege tax law, on any contract made in reference to the business carried on in disregard of the law. The court's decision in the *Pollard case* was based squarely on the language of the statute. The statute made void all contracts, however remote they might be from the actual business in which the party was engaged, if the contract was made merely in reference to the business carried on in violation of the law. Had the statute not been so written, we dare say that the court would not have held, even in this case, that the contract of insurance on the stock of goods was void.

Where a contract of insurance is made in good faith and the premiums paid, and the purpose of the insurance is not to effect, advance, or encourage acts in violation of the law, the policy is not void. This insurance contract was not necessary in order to enable appellant to conduct her bawdy house. The contract of insurance did not in any way advance her interest in this business or encourage it. It did not promote the unlawful business, or help her to accomplish it in any way whatever. She could have conducted and carried on her bawdy house as well without the insurance policy as she could with it. The only effect of the insurance policy was that, in case her property was lost by fire, she should have an indemnity for the loss of the property; but the contract did not even remotely aid or assist her in the conduct of this business. She did not receive by means of this insurance any aid to the conduct of her

business. The only thing she did do was to make an illegal use of the property which the provisions of the policy covered; but this did not invalidate the contract. This contract of insurance was perfectly good. The keeping of the bawdy house was an independent, illegal transaction, which the insurance policy·in no way aided or promoted. To· defeat the action on the policy it is necessary to hold that the policy itself is an immoral contract, against public policy as tending to promote the business of maintaining a bawdy house. The record in this case does not show that the contract of insurance was an immoral one and against public policy, nor is its tendency necessarily or even remotely the promotion of the business of maintaining a house of prostitution. The insurance of this property, although it may be illegally used, is a perfectly good insurance, unless the contract of insurance in some way promotes the business. This contract does not do this. *Phœnix Ins. Co.* v. *Clay,* 101 Ga., 331; 28 S. E., 853; 65 Am. St. Rep., 307; Joyce on Insurance, vol. 3, §§ 2536, 2507; *Behler, Adm'r* v. *German Mutual Fire Ins. Co.,* 68 Ind., 347.

*Reversed and remanded.*

WHITFIELD, C. J., delivered the following dissenting opinion.

I dissent *in toto* from the reasoning of the opinion and the judgment of the court in this case. · If the court had squarely overruled *Pollard* v. *Insurance Co.,* 63 Miss., 244; 56 Am. Rep., 805, and held that a fire insurance policy is not a contract which relates to or concerns the business of a merchant whose stock is insured against fire, within the meaning of the provision of our statute that, unless such merchant pays the proper privilege tax, he cannot enforce contracts relating to his business, there might have been some pretty solid ground for the court to stand on, since there are decisions, especially two by the United States supreme court (*Ocean Ins. Co.* v. *Polleys,* 38 U. S., 157; 10 L. Ed., 105, and *Armstrong* v. *Toler,* 24 U. S. 258; 6 L. Ed., 468, and note), referred to by the

learned counsel representing the insured in this case, which go far to show that the *Pollard case* was unsoundly decided in the particular indicated. But it is not logically possible to approve and stand by the *Pollard case,* and at the same time hold that the insured can recover in this case. It is not a possible thing, in reason, to draw any sound distinction between the *Pollard case* and this case. Indeed, the principles of the *Pollard case* apply more strongly to the facts of this case than to the facts of the *Pollard case* itself, just as much more strongly as prostitution is a greater outrage on public policy than the mere failure to pay a privilege tax. In the single respect that the fire insurance policy pertains to, or relates to, or concerns the business carried on, the two cases are absolutely identical.

Another plain reason why, if the *Pollard case* is sound, these plaintiffs cannot recover — for they are, indeed, far less able to recover on principle than Pollard was — is that in the *Pollard case* the only thing which made Pollard's fire insurance policy enforceable was the mere failure to pay a privilege tax, a thing *malum prohibitum,* not *malum in se;* whereas, here the thing which makes this contract unenforceable is not something *malum prohibitum* only, but something which is *malum in se* in every civilized community in the world, to-wit, prostitution. In other words, if it was sound law to hold Pollard barred because of a failure to comply with the mere technical law, failure to pay a privilege tax, how can these plaintiffs recover who are engaged in a business far worse than one merely *malum prohibitum* — one that is abhorrent to the public policy of every civilized community?

I do not care to enlarge. I merely wish to put myself properly on record.