## Aetna Insurance Company *v.* Heidelberg.

[72 South. 852-470.]

1. Insurance. *Validity of contract. Use of property. Household goods. Valuation. Statute. Items.*

   Where a furniture dealer sold and delivered household furniture with a reservation of title to a woman who kept a house of ill fame and thereupon took out a policy of fire insurance to protect his interest in the same, and afterwards took back the furniture under his reserved title and turned it over to another party who left the property in the house in which it was insured under the care of a watchman, and the furniture was burned. In such case the contract of insurance was not vitiated by the fact that the purchaser of the furniture kept a house of ill fame, since the premium paid by the insurer as a consideration of the contract was not connected with such use of the furniture.

2. Insurance. *Household goods. Valuation. Statute.*

   Where the contract of insurance expressly insured the property as household furniture, and the various articles had been severed from the stock of the insured and delivered to the purchaser, put in order and were actually being used as household furniture they must be so classed. In such case the valued policy law applied and the insurer having the right of inspection when the insurance was written, could not show, that the actual cash value of the property was worth less than the amount of the insurance.

3. Insurance. *Household goods. Valuation. Items.*

   Under such contract where certain articles of furniture were sold by the insured after the taking out of the policy, directly to the purchaser to whom he had sold the rest of the furniture, after retaking it under his reserved title, and as to which no indorsement was made on the policy, so as to expressly include them, such last articles of furniture were not covered by the policy.

Appeal from the circuit court of Forest county.

Hon. Paul B. Johnson, Judge.

On suggestion of error former opinion 72 So. 470.

*McLaurin & Armistead,* for appellant.

*Sulivan, Conner & Sulivan,* for appellee.

STEVENS, J., delivered the opinion of the court.

This case was affirmed without opinion, but in view of the earnestness and confidence with which counsel for appellant press the suggestion of error that was filed in due time, we are stating briefly the reasons that induced us to affirm the case. The appellee in this case, a retail furniture dealer, entered into a contract of insurance with appellant, whereby appellant insured appellee against all loss or damage by fire to an amount not exceeding two thousand four hundred dollars —"on their interest in the household furniture of every description, useful and ornamental, while contained in the two-story, frame, shingle building occupied by Marie Warwick as a female boarding house, situate on the east side of Dewey street of Hattiesburg, Miss. It is understood that this property is under contract of sale to Marie Warwick, title being retained by the assured until all deferred payments are made, and this policy covers only any interest that the assured may have in the property at the time of any loss or damage by fire."

Mr. Heidelberg had, in due course of business, on June 14, 1913, sold and delivered the articles covered by this policy to the said Marie Warwick, for a total consideration of two thousand six hundred and thirty dollars and seventy-five cents, and the numerous articles so sold had been delivered to and were under the control of Marie Warwick when the contract of insurance was entered into. On or about April 8, 1914, Marie Warwick having failed to pay for the goods in question, they were turned over to Heidelberg under his retained title contract, and appear to have been under Heidelberg's control from that date until about the 13th day of April, following, when they passed into the possession and under the control of one Nettie Wilson. The latter left the property in the house

formerly occupied by Marie Warwick, and the house was in the care of a servant or watchman until the 18th day of April, when the property so insured was totally destroyed by fire. The proof shows that Marie Warwick was a keeper of a house of ill fame at the time she purchased the furniture. She made certain payments on the property, reducing the amount to two thousand one hundred and seventy-five dollars and sixty-five cents. On April 13th, the day that appellee resold the property to Nettie Wilson, he notified Mr. King, the agent of appellant, of the change of ownership, and also advised Mr. King that he had sold a few additional articles of household furniture and furnishings to Nettie Wilson, the total purchase price of which was seventy-four dollars and thirty-five cents. thereby making the total balance claimed against Nettie Wilson of two thousand two hundred and fifty dollars. Appellee requested the agent to make the necessary notation on his records, and to this request Mr. King replied: "All right, I will take care of that. I will fix it all right." Mr. King is the regular local agent of the company at Hattiesburg, with authority to countersign policies, and, in fact, wrote the policy of insurance in this case.

Appellant, defendant in the court below, filed several pleas. A demurrer was interposed and sustained to the third plea, in which appellant submitted that:

"The plaintiff says that the defendant ought not to be entitled to recover anything on this contract because the purchaser or purchasers of the property in question, the subject of the insurance, and the owner of it at the time the contract of sale was made, and practically continuously thereafter until the fire, was engaged in an illegal and immoral business, to-wit, she or they were the proprietresses or keepers of a house of ill fame," of which appellee had notice, etc.

This is the main point of law relied upon by counsel for a reversal of this case. Upon this question the

fact must be kept in mind that the subject of this insurance, that is, the household furniture and furnishings, were purchased by Marie Warwick on credit, some fifteen days prior to the issuance of the policy in question, and at the time the contract of insurance was written the furniture no longer constituted a part of appellee's stock of merchandise, but had been set up by Marie Warwick in her dwelling house and was being used for the purposes for which the property was adapted and purchased. It therefore constituted household furniture when Mr. Heidelberg protected his insurable interest therein. This case does not involve the right of Mr. Heidelberg to collect the purchase price of the property either from Marie Warwick or Nettie Wilson. They purchased the property and were the equitable owners thereof, while Heidelberg, in the eyes of the law, simply held the contract that gave him, not the rights of an absolute owner, but security for his debt. In obtaining the insurance, Heidelberg paid the premium of sixty dollars and the contract is one directly between Heidelberg and the insurance company. In our judgment, the illegal and immoral business conducted by the purchaser of this property cannot and does not vitiate the contract of insurance, which indemnifies the merchant and not the keeper of the house of ill fame. It is said by the supreme court of the United States, speaking through Chief Justice MARSHALL, in *Armstrong* v. *Toler,* 11 Wheat. 258, 6 L. Ed. 468.

"If the promise be unconnected with the illegal act, and is founded on a new consideration, it is not tainted by the act, although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act."

And:

"A new contract, founded on a new consideration, although in relation to property respecting which there

112 Miss.—4

had been unlawful transactions between the parties, is not itself unlawful.''

The case of *Ocean Insurance Co.* v. *Polleys,* 13 Pet. 157, 10 L. Ed. 105, involved a contract of insurance upon a schooner owned by Polleys and sailing under a false and fraudulent certificate of registry, in violation of the laws of the United States. It was contended that the contract of insurance was void. The supreme court, speaking through Mr. Justice STORY, overruled this contention—''upon the ground that the policy was a lawful contract in itself, and only remotely connected with the illegal use of the certificate of registry, and in no respect designed to aid, assist or advance any such illegal purpose. We all know that there are cases where a contract may be valid, notwithstanding it is remotely connected with an independent illegal transaction, which, however, it is not designed to aid or promote.''

The case of *Phoenix Insurance Co.* v. *Clay,* 101 Ga. 331, 28 S. E. 853, 65 Am. St. Rep. 307, involved a policy of insurance on a house leased by the owner to a woman of ill fame and with knowledge that the house was being used for purposes of prostitution. The court says:

''The policy was for a valuable and legal consideration and for what appears on its face to be a good and lawful purpose. It was made not to protect the business of keeping a lewd house, but to protect the property of the owner of the building. Even were the owner the person conducting this illegal business, the policy would be issued to him, not as one engaged in such business, but as the owner of the property insured; not to protect him against the consequences of the illegal business, but against accident to his property. . . . A consequence so negative in its character, so remote in its effect, is one which cannot be said in law to promote or to tend to promote the maintenance of these houses. Such policy of insurance

can be said to promote the illegal business only by failing to discourage it, to aid it only by declining to throw obstacles in its way," etc.

Our own court held in the case of *Conithan* v. *Insurance Co.*, 91 Miss. 386, 45 So. 361, 18 L. R. A. (N. S.) 214, 124 Am. St. Rep. 701, 15 Ann. Cas. 539, that:

"A policy of fire insurance issued to the keeper of a bawdyhouse upon furniture used therein is not void because of the unlawful business conducted there."

The court in its opinion observes:

"She could have conducted and carried on her bawdyhouse as well without the insurance policy as she could with it. The only effect of the insurance policy was that, in case her property was lost by fire, she could have an idemnity for the loss of the property; but the contract did not even remotely aid or assist her in the conduct of this business. . . . The keeping of the bawdyhouse was an independent, illegal transaction, which the insurance policy in no way aided or promoted."

If the keeper of a bawdyhouse can herself obtain a valid contract of insurance, then certainly the merchant who has a lien upon the same property should be accorded the right to protect his insurable interest. Furthermore, the proof does not show that Nettie Wilson was using the property for immoral purposes, but, on the contrary, the house in which the furniture was situated was not being occupied by Nettie Wilson at all, but was in the care of a watchman at night, and this with the full knowledge and assent of appellant's agent.

There is no merit in the contention that the property insured should not be classed as household furniture, but should be regarded as a part of appellee's stock of merchandise. The contract expressly insured the property as household furniture; the various articles had been severed from the stock, delivered to the purchaser, put in order, and were actually being used as

household furniture, and must in fact be so classed. Our valued policy law therefore applied, and appellant was not justified in attempting to show the actual cash value of the property, or its depreciation, or the amount it would cost to replace it. Appellant had the right of inspection at the time the insurance was written, and by writing the policy in question it is concluded, under the terms of our statute, on all questions of valuation and cannot now be heard to say that the property was or is not worth the amount at which it is insured.

This record shows, however, that certain lace curtains, bedspreads, cuspidors, and other specified articles were on April 13th sold by appellee directly to Nettie Wilson, and constituted, therefore, no part of the subject of the insurance at the time the policy was executed. While the agent was requested to embrace these articles in the policy, no indorsement to this effect was in fact made, and the policy does not in terms cover these articles. Their value is shown to be seventy-four dollars and thirty-five cents. They were not originally subject to the retained title contract entered into between appellant and Mary Warwick. In affirming this case without an opinion we were, as to this item, led into error by assuming that the amount of recovery did not exceed the face of the policy, and therefore appellant has no complaint. We now think, however, that inasmuch as the proof clearly shows that these articles were sold long after the policy was written, and sold not to Marie Warwick, but to Nettie Wilson, they do not come within its protection. It is our judgment that the suggestion of error should be sustained to the extent of reducing the judgment seventy-four dollars and thirty-five cents, the allowance of which constituted error on the part of the court below. We also think the costs of the appeal should be taxed against appellee.

*Suggestion of error sustained in part.*