GEORGE VOS v. ALBANY MUTUAL FIRE INSURANCE COMPANY.[1]

March 16, 1934.

No. 29,459.

[1]Reported in 253 N. W. 549.

R. B. *Brower* and J. B. *Himsl,* for appellant.
*Henry H. Sullivan,* for respondent.

*DEVANEY, Chief Justice.*

Action upon a fire insurance policy issued by defendant, Albany Mutual Fire Insurance Company, to plaintiff, George Vos. Defendant is a township mutual fire insurance company, organized in 1895 and doing business in townships in Stearns county. Its authority is limited, in the main, to the insurance of farm buildings and farm property used for farming purposes as specifically enumerated in 1 Mason Minn. St. 1927, § 3659, as amended by L. 1933, cc. 52 and 421. The policy covered certain farm buildings, including a barn and the personal property such as hay, machinery, cattle, etc. contained therein. The barn and personalty were destroyed by fire, and plaintiff now seeks indemnity under the policy. Defendant contests liability on the ground that there was an illicit still in the barn illegally used in the manufacture of liquor, which fact was not disclosed in plaintiff's written application for insurance and was at all times unknown to the defendant company. Plaintiff admits that a still was maintained and actively operated in the barn and that such fact was not disclosed in his application. He contends, however, that defendant, through its agents, knew at the time of the issuance of the policy that the barn contained such a still and that, since defendant had such knowledge, it cannot now

assert this fact as a defense. The case was submitted to a jury, who found for plaintiff in the sum of $4,050 under instructions such that they could only so find if they believed that defendant knew when issuing the policy that the barn contained an illegal still. From an order denying its alternative motion for judgment or for a new trial defendant appeals.

The jury's finding in accordance with the evidence produced by plaintiff that defendant company knew of the existence of the still at the time that it issued the policy is amply supported by the evidence. In fact, there was evidence, which if believed, would show that the president of defendant company had such knowledge. In legal effect the result is the same, therefore, as though there had been incorporated in this policy at the time of its issuance a provision that defendant company would insure this barn even though and despite the fact that it housed an actively operated illicit still.

In so far as the company agreed to indemnify plaintiff for loss of the barn and its contents occasioned by fire under this policy as changed by the act of defendant's agents in waiving the provision of the policy respecting the increase in hazard by the installation of an illicit still, we think the policy is *pro tanto* void as violative of public policy. There can be no question but that defendant could not have insured the illegal still and its component parts as such, knowing that the plaintiff intended using the same to manufacture illicit liquor. Plaintiff does not contest this rule and in fact makes no attempt to recover for the value of the still itself. The law will not permit a person to insure property illegally used and thus to indemnify himself in the event of its loss or confiscation. To do so would be to encourage and further criminals in their illegal actions and transactions. Such a furthering manifestly would contravene public policy.

We approach the case at bar bearing in mind this rule that the law will not in any way further the doing of an illegal act by allowing its perpetrator to be indemnified or made whole from any of the consequences which might or are apt to follow therefrom. Here recovery is sought for the loss of the barn which housed the illegal still. This is but one step removed from an attempt to recover

for the loss of, or damage to, the still itself. Plaintiff must have known when operating the still that he was increasing the fire hazard to his barn. The gasolene stove; the lack of a chimney for such stove; the highly inflammable character of the illegal beverage which he was distilling; all are factors which plaintiff knew or should have known increased greatly the danger of destruction of the barn by fire. Since plaintiff was aware of the fact that by engaging in this illegal business he was increasing the hazard of fire, the law will not permit him to indemnify himself against any loss which might be caused by the illegal operation of this still. Plaintiff was, by obtaining insurance, seeking to indemnify himself against one of the consequences which might follow his prosecution of this illegal act. This he cannot do. If this court were to allow him so to do, it would to that extent foster and encourage the illicit purpose of the act. The average person, cognizant of the increased fire hazard, is much more apt to erect and operate a still in his barn if he can insure the building housing the same than he is if he cannot.

We are aware of the fact that the question here presented is a new one in this state. As far as we can find, there is no case anywhere on all fours with the one at bar. The fact that this case blazes a new trail should not, we believe, deter us. In the forepart of the case of Armstrong v. Toler, 11 Wheat. 258, 261, 6 L. ed. 468, appears the following statement, which we think correctly states the law in the abstract:

"Where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. And if the contract be in part only connected with the illegal transaction, and growing immediately out of it, though it be, in fact, a new contract, it is equally tainted by it."

Of somewhat more specific application to the case at bar is a quotation from 5 Couch, Cyc. of Ins. Law, § 1114, p. 3927, as follows:

"Where the premises are insured and they are kept solely or *partly* for carrying on an unlawful business, the question is pertinent whether the insurance is not so closely connected with the illegal or unlawful use that it does in fact operate as a cover for

the unlawful purpose, and so taint the contract itself with illegality. If it does tend to assist or abet the wrongdoer in transgressing the laws, and if it does in reality aid or promote the illegal transaction, and encourages an abatement of the laws, there are strong reasons for holding that the insurance is illegal, and not a mere collateral valid contract into which no illegal design enters."

On the general question of insuring property illegally used or connected with an illegal use, there appear to be two views. Massachusetts typifies the stricter view. There it is held that a policy on a building to be used as a public hotel, the insured not being licensed to keep such hotel, is void as an insurance on an unlawful business. Campbell v. Charter Oak F. & M. Ins. Co. 10 Allen, 213. Similarly, a policy of insurance covering a stock of liquors kept for sale in violation of statutes regulating the sale of liquor has been held invalid as tending to make safe and profitable an illegal business. Kelly v. Home Ins. Co. 97 Mass. 288; Johnson v. Union M. & F. Ins. Co. 127 Mass. 555; Lawrence v. National F. Ins. Co. 127 Mass. 557, note; accord, see Wood v. First Nat. F. Ins. Co. 21 Ga. App. 333, 94 S. E. 622, 735. The federal courts have held invalid contracts of marine insurance where the voyage is illegal according to the law of nations or the law of the country where the contract is made. Craig v. U. S. Ins. Co. 6 Fed. Cas. 733; Gray v. Sims, 10 Fed. Cas. 1039; see also Gardiner v. Smith, 1 Johns. Cas. (N. Y.) 141. An attempt to insure lottery tickets has been held to be an invalid impingement of public policy. Mount & Wardell v. Waite, 7 Johns. (N. Y.) 434. It has been said that one cannot by express terms insure himself against damage resulting because of a violation of a criminal statute. Messersmith v. American Fidelity Co. 187 App. Div. 35, 175 N. Y. S. 169, 170. These cases seem to adhere to the view that where the articles insured are used in an illegal business or trade or the consequences insured against result from a prohibited act the policy is invalid whether or not the insurance actually furthers the illegal purpose, makes it safer or more profitable, or invites the perpetration of the illegal act.

Other courts seem to have taken the view that the insurance is valid even though closely connected with and related to an illegal

enterprise if the insurance does not directly further the illegal purpose or make it more likely that a person will engage therein than as if he cannot procure insurance. So it has been held that a policy covering the furniture in a bawdyhouse is not void as against public policy, since the contract of insurance was not necessary to the welfare of the house and in no way promoted the unlawful business. Conithan v. Royal Ins. Co. 91 Miss. 386, 45 So. 361, 18 L.R.A.(N.S.) 214, 124 A. S. R. 701, 15 Ann. Cas. 539; Aetna Ins. Co. v. Heidelberg, 112 Miss. 46, 72 So. 852, L. R. A. 1917B, 253; Electrova Co. v. Spring Garden Ins. Co. 156 N. C. 232, 72 S. E. 306, 35 L.R.A.(N.S.) 1216. Apparently the majority of decisions hold that the validity of a policy covering intoxicating liquors depends upon the intent with which the property is insured. It must appear that the policy was issued for the purpose of protecting the illegal traffic in order that it shall be declared invalid. 1 Cooley, Briefs on Insurance (2 ed.) pp. 833, 834. It has been held in Iowa that a policy on store fixtures is not invalid because such fixtures are used in carrying on an unregistered pharmacy business. Erb v. Fidelity Ins. Co. 99 Iowa, 727, 69 N. W. 261.

It is not necessary for us now to adopt one or the other of the above rules, for we think that under either rule the policy in the case at bar would be held invalid since it is clear that this illegal still had no legitimate use and that the insurance of this barn directly furthered an illegal purpose. The law will not sanction anything which either directly or indirectly furthers an illegal purpose. Modern organized crime threatens the very foundation of constituted society and the enjoyment by all citizens of the peace and protection of good government. Courts must not lend themselves to the enforcement of contracts which give protection to those engaged in crime. This court will not. The unlawful manufacture of alcoholic liquor has presented a major problem to the law enforcement officers and has written its chapter into the recent crime annals of the state. It is so likely to continue. The contract here considered furthers directly the illegal manufacture of alcoholic liquor and therefore furthers crime itself. To uphold it would be subversive of every decent public interest in the state.

We refrain in the instant case from expressing an opinion as to whether if the dwelling house or any other building detached from the barn had burned plaintiff could have recovered.

Neither counsel have argued the law to be as we are here deciding, but we are not confined to the argument and authorities set forth in the briefs. Where the illegality of the contract on which suit is brought clearly appears, the court on its own motion will declare the contract unenforceable. In Jacobson v. Barnes, 176 Minn. 4, 8, 222 N. W. 341, 342, this court said:

"Where such invalidity [illegality of the contract upon which suit is brought] appears it is the duty of the court itself to assert it and deny relief even though the parties themselves do not raise the question by pleading or otherwise."

See also Hackett v. Hammel, 185 Minn. 387, 389, 241 N. W. 68; Goodrich v. N. W. Tel. Exch. Co. 161 Minn. 106, 112, 201 N. W. 290. Though this rule at one time apparently was not followed by this court (see Ross, *Minnesota Pleading as "Fact Pleading,"* 13 Minn. L. Rev. 348, 349-351), it now seems well settled that the defense of illegality can be raised under a general denial or by the court on its own motion. 16 Minn. L. Rev. 720, 721.

Under the view here taken, it becomes immaterial whether or not the fire actually was caused by the still. In accordance with the foregoing, we direct that judgment be entered for defendant.

Reversed.