## PHENIX INSURANCE COMPANY *v.* CLAY.

1. The mere fact that a house is let to and occupied by a lewd person, which, with the knowledge of the owner, is to be used by her for purposes of prostitution, does not of itself avoid a policy of insurance issued thereon in favor of the owner. The contract of insurance is not so connected with the contract of rental as to prevent, in case of loss, the maintenance of an action on the policy by the owner.
2. The specific questions made in the record, other than as above ruled, were examined and determined when this case was here upon a former writ of error.
3. The questions of law made in this case were of such character as to acquit the defendant of bad faith in refusing to pay the loss within the time

limited by law, and to the extent of the finding of attorney's fees and damages the verdict is contrary to law ; and direction is therefore given that upon or before the entering of the remittitur the plaintiff shall write off the items allowed on that account in the finding by the jury, and that the verdict thereupon stand affirmed, the costs accrued since the verdict to be taxed against the defendant in error.

Argued March 4, — Decided June 9, 1897.

Action on insurance policy.    Before Judge Felton.    Bibb superior court.    April term, 1896.

*Dessau & Bartlett* and *Robert Hodges*, for plaintiff in error.
*Hardeman, Davis & Turner*, contra.

SIMMONS, C. J.    The Phenix Insurance Company issued to Clay a policy of insurance on a house of the latter, which had been by him let to a lewd woman with knowledge on his part that it was to be used by her for purposes of prostitution. The question to be decided here is as to whether the fact that the house was so rented and used will, in case of loss, defeat Clay's action on the policy.    In the absence of any stipulation in the policy under which the immoral use of the house would vacate the contract, the policy would not be vacated unless it be shown that the contract is immoral or illegal or is against public policy and not enforceable.    It is well settled that contracts will not be avoided by the courts as against public policy, except "where the case is free from doubt and where an injury to the public interest clearly appears." Therefore, to defeat the action on the policy, it must be shown either that the policy is itself illegal as promoting or tending to promote the maintenance of a lewd house, or that the contract of insurance, while in itself legal, is so connected with the illegal act or business or with the contract of rental that the courts, on grounds of public policy, will not lend their aid in its enforcement.

1. Let us consider these questions in inverse order.    In the case of Armstrong *v.* Toler, 11 Wheaton, 258, opinion by Marshall, C. J., the Supreme Court of the United States held: "Where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it.    But if the promise be entirely

disconnected with the illegal act, and is founded on a new consideration, it is not affected by the act, although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act." The same court, in the case of Ocean Ins. Co. v. Polleys, 13 Pet. 157, held: "A contract may be valid, notwithstanding it is remotely connected with an independent illegal transaction, which, however, it is not designed to aid or promote." The same doctrine was held by this court in the case of *Howell* v. *Fountain*, 3 *Kelly*, 176, where the court commended and recognized as well founded the statement that "no action can be maintained upon an illegal or immoral contract; yet where the contract was disconnected with the original unlawful act and was founded on a new and distinct consideration, an action might be maintained upon it, although it could not be maintained upon a contract directly arising out of the illegal act." So here, if the policy of insurance be shown to grow immediately out of the illegal use of the house or to be directly connected therewith, the courts will not enforce it. So far as the insurance is concerned, neither party to the policy was benefited by the illegal use of the insured property. The contract of insurance can not be said to grow out of or to be connected with the illegal use of the house. To the contrary, the policy was made to insure the owner of the building against accident to which all houses are liable, and this house neither more nor less on account of its use for purposes of prostitution. For the same reasons the insurance policy was clearly disconnected with the contract of rental and founded on a new and distinct consideration, only one of the parties, indeed, being common to the two contracts. In such cases it is well settled in this and other jurisdictions that an action may be maintained to enforce a contract valid in itself though it may be "remotely connected with an independent illegal transaction, which, however, it is not designed to aid or promote." If, therefore, the insurance policy be treated as in itself valid, it is enforceable although possibly connected in a remote way with an illegal business and with a contract of rental which is probably not enforceable. 3 Joyce on Insur-

ance, § 2507.   To defeat the action on the policy, it is there-
fore necessary to show that the policy is itself an immoral
contract and against public policy as tending to promote the
business of maintaining a lewd house.

The policy was for a valuable and legal consideration and
for what appears on its face to be a good and lawful purpose.
It was made not to protect the business of keeping a lewd house,
but to protect the property of the owner of the building.   Even
were the owner the person conducting this illegal business, the
policy would be issued to him, not as one engaged in such
business, but as the owner of the property insured; not to pro-
tect him against the consequences of the illegal business, but
against accident to his property.   For this reason the present
case is to be distinguished from decisions cited in which poli-
cies of lottery and marine insurance have been held void.   The
distinction is well drawn in the case of Niagara Falls Insur-
ance Co. *v.* DeGraff, 12 Mich. 124, by Campbell, J., a part of
whose opinion is here adapted to the present case.   The in-
surance of a lottery-ticket requires that the lottery be drawn
in order to attach the insurance on the risk.   Where a ship is
insured for an illegal voyage, that voyage is the only one upon
which the insurance would apply, and the underwriter becomes
thus directly a party to the illegal act.   In some cases the insur-
ance is against loss by forfeiture or penalty incurred by reason of
the illegal trade, and the purpose and object of the insurance
are therefore a violation of law.   In some of the cases, again, the
insured property is liable to seizure and forfeiture, and a doubt
arises as to whether the assured has an insurable interest.   To
make analogous to these the case of an insurance on property
used for immoral purposes, the insurance must be against the
consequences of a breach of the law, as would be the case if
this policy in express terms insured the party maintaining a
lewd house against loss by fine or penalty incurred by reason
of the illegal business.   The policy, as in fact made, differs
widely from this; for, as we have seen, it insured against loss
by fire, and not against the consequences of the unlawful con-
duct of the assured.   The owner could, without violating the
policy, use his house for any other and lawful purpose which

would not increase the hazard. The contract does not require that the property shall be devoted to any one use, and, as it is susceptible of lawful uses, the company can not be held to have contracted concerning it in an unlawful manner unless the contract is itself for an illegal purpose. It is clear, then, that the *purpose* and *object* of the contract of insurance are not in contravention of the public interest; and the sole remaining question is whether that contract is against public policy as tending to promote an illegal and immoral business.

Were insurance policies not enforceable when issued on buildings used as houses of prostitution, the owners of such buildings *might* be less willing to have them so used. To hold such policies good and binding might, therefore, while holding out absolutely no aid to such uses, indirectly and negatively encourage owners to let their buildings for immoral purposes. A consequence so negative in its character, so remote in its. effect, is one which can not be said in law to promote or to tend to promote the maintenance of these houses. Such policy of insurance can be said to promote the illegal business only by failing to discourage it, to aid it only by declining to throw obstacles in its way, and certainly this is not a case "free from doubt, where an injury to the public interest clearly appears." See 3 Joyce on Insurance, §§ 2536, 2537. To refuse to enforce transactions relating to property used by the owner for immoral purposes, unless such transactions tended positively to discourage such illegal use, would be to infringe on the property rights of the owner and to extend the penalty beyond that prescribed by law. The statute which forbids the maintenance of a lewd house does not subject the building to any forfeiture, but renders him who maintains the lewd house guilty of a misdemeanor and personally liable for a penalty. The rights of the owner in his property are not therefore lessened, for the penalty relates to his person and not to the house. If an insurance policy on a building used as a house of prostitution will not be enforced by the courts, why should they not also refuse to enforce a contract for the sale of the building? For, while to allow the sale of the house would not encourage its illegal use, yet to disallow the sale would discourage such use

fully as much as a refusal to accord insurance rights. Without doubt this would be an effort to invade the province of the legislative branch of our government by extending and increasing the penalties imposed for the illegal act in question. Further, to hold that a policy of insurance on a lewd house is contrary to public policy as tending to promote the keeping of a lewd house would be to require not only that a contract shall not tend to promote an immoral or illegal act or business, but that it shall tend positively to discourage any unlawful acts in connection with the property to which it relates. For such position we believe that no authority can be found.

2. This court at the March term, 1895, upon a former writ of error, dealt with all the questions made in the record of this case, except as above decided, and by its decision then made fully determined such questions. *Clay* v. *Phenix Insurance Co.*, 97 *Ga.* 44.

3. We think that the insurance company should not be made to pay damages or attorney's fees. It is provided by section 2140 of the Civil Code, that insurance companies shall, where a loss occurs and they refuse to pay the same within sixty days after demand, be liable for damages and attorney's fees, "*provided,* it shall be made to appear to the jury trying the same that the refusal of the company to pay said loss was in bad faith." The questions of law made in this case were of such character as to acquit the defendant of the imputation of bad faith in refusing to pay the loss within the time limited by law; and the court has accordingly given appropriate direction that the damages and attorney's fees allowed on account of the refusal to pay be written off.

*Judgment affirmed, with direction.   All the Justices concurring.*