## 50946. CASH v. STREET & TRAIL, INC.

MARSHALL, Judge.

This appeal is from the grant of a summary judgment in favor of the appellee, defendant below. The facts giving rise to this controversy reflect that the appellee, Street & Trail, Inc., was a corporate business selling motorcycles and similar vehicles to the public. On

August 14, 1972, appellant Cash, plaintiff below, went to appellee's premises for the purpose of obtaining a demonstration ride on a cross country, medium-powered motorcycle. A salesman and agent for appellee informed appellant there were no cross country motorcycles of the kind sought by appellant available for examination and demonstration. Further inquiry by appellant disclosed that appellee had available a more powerful racing motorcycle. Appellant indicated an interest in examining that vehicle and taking a demonstration ride thereon. Appellee's salesman made careful inquiry of appellant if appellant was familiar with the more powerful motorcycle and if he had ever ridden one. Upon assuring the salesman of his familiarity with the particular model involved and his desire to ride one, the salesman caused a motorcycle of the more powerful type to be prepared for a demonstration ride. Prior to allowing appellant to ride the motorcycle, appellee presented to and caused appellant to sign a "waiver of liability." That document as signed by appellant provided in pertinent part that appellant " . . . for the sole consideration of Street and Trail, Inc., allowing me to examine and ride for the demonstration, as a prospective purchaser, their motorcycle . . . do hereby release, and forever discharge Street and Trail, Inc., . . . of any and from all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property, and the consequences thereof, resulting from my riding and examining said motorcycle . . . belonging to Street and Trail, Inc."

Appellant asserted that he was told the "waiver" would make him liable for any damage he might cause to the motorcycle and that he could not ride the vehicle until he signed the document. After signing the "waiver," appellant drove the motorcycle on the grounds of appellee's business premises for about ten minutes. At a time when no other person was observing his operation of the motorcycle, appellant became involved in an accident, striking trees and/or a telephone pole on the edge of the area in which he was riding. Appellant,

though in pain, was not allowed to leave until he had paid approximately $18.00 for damages to the motorcycle. Thereafter appellant was admitted to a hospital and received significant medical attention and care for internal injuries resulting from the incident.

Appellant brought suit alleging that the motorcycle furnished him was defective causing the front wheel to "lock" throwing him bodily over the handlebars and causing the resulting personal injuries. Appellee defended on the ground that appellant had released appellee for any and all injuries and was barred from bringing suit. The trial court granted appellee's motion for summary judgment. This appeal followed in due course with but a single enumeration of error, the granting of the motion for summary judgment and dismissal of appellant's complaint. *Held:*

This case presents for identification, clarification and appropriate application, the legal terms "release," "covenant not to sue," and "indemnity agreement." This resolution is required because the parties to this litigation tend to use interchangeably the three terms. It seems clear, however, that the terms are not interchangeable and each pertains to different legal principles.

In its purest sense, a release does not relate to a future or contingent claim. Where a "release" speaks in terms of a future or contingent claim ( *Hearn v. Central of Ga. R. Co.,* 22 Ga. App. 1, 7 (95 SE 368); *McCommons v. Greene County,* 53 Ga. App. 171, 174 (184 SE 897)), it is more accurately denominated "a covenant not to sue." Wilder v. Penn. R. Co., 245 N. Y. 36 (156 NE 88, 52 ALR 188). Thus a covenant not to sue is appropriately described as an agreement not to sue, given in exchange for lawful consideration. At the time such an agreement is given, there is no claim in existence to be released. It speaks of the future, not of the present or past. Since no liability exists, none can be released. *Doster v. C. V. Nalley, Inc.,* 95 Ga. App. 862, 865 (99 SE2d 432); Wilder v. Penn. R. Co., supra.

On the other hand, a "release" must come after a cause of action has arisen. It operates to release a tortfeasor on the theory that there should be a just

satisfaction and there has been a complete accord and satisfaction. See *Edmondson v. Hancock,* 40 Ga. App. 587 (151 SE 114); *Caplan v. Caplan,* 62 Ga. App. 577 (9 SE2d 96); *Moore v. Smith,* 78 Ga. App. 49 (1) (50 SE2d 219); *Giles v. Smith,* 80 Ga. App. 540 (56 SE2d 860).

"Indemnity" has been defined as "the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit. *Copeland v. Beville,* 93 Ga. App. 442 (92 SE2d 54). This is traditionally a covenant by the indemnitor to indemnify or "save harmless" the indemnitee from claims of third parties (Martin v. American Optical Co., 184 F2d 528, 529 (2)), and sometimes from claims caused by the indemnitee's own fault or negligence. The tendency has been not to sustain an indemnity agreement against the indemnitee's own negligence unless the agreement spells out the indemnitee's obligation in unequivocal terms. See, *Batson-Cook Co. v. Ga. Marble &c. Co.,* 112 Ga. App. 226, 230 (144 SE2d 547); *Bohannon v. Southern R. Co.,* 97 Ga. App. 849, 850 (104 SE2d 603); *Fisk Tire Co. v. Hood Coach Lines,* 54 Ga. App. 401 (188 SE 57); Halliburton Oil Well Cementing Co. v. Paulk, 180 F2d 79; Standard Oil Co. of Texas v. Wampler, 218 F2d 768; Buffa v. General Motors Corp., 131 FSupp. 478.

The agreement signed by appellant in this case clearly fits within the niche carved out of the law to be a "covenant not to sue." As such, it is a contractual undertaking between two parties. "[I]f there is one thing which more than another public policy requires, it is that men of full age and competent understanding, shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by the courts of justice. Therefore, you have this paramount public policy to consider — that you are not lightly to interfere with this freedom of contract." From the opinion of Sir George Jessel, M. R., in Printing and N. Registering Co. v. Sampson, 19 L. R. Eq. 465, quoted with approval in *Mut. Life Ins. Co. v. Durden,* 9 Ga. App. 797, 800 (72 SE 295). "It is well settled that contracts will not be avoided by the courts as against public policy, except 'where the case

is free from doubt and where an injury to the public interest clearly appears.'" *Phenix Ins. Co. v. Clay,* 101 Ga. 331, 332 (28 SE 853).

On the premise that all people who are capable of contracting shall be extended the full freedom of doing so if they do not in some manner violate the public policy of this state, both the Supreme Court and this court have held that if a party to a contract contemporaneously gives the other a covenant not to sue he is bound by it. *Martin v. Monroe,* 107 Ga. 330 (3) (33 SE 62); *Arnold v. Johnston,* 84 Ga. App. 138 (65 SE2d 707); *Jones v. Darling,* 94 Ga. App. 641 (95 SE2d 709).

In the agreement under consideration, appellant released and discharged appellee "of any and from all claims" arising from bodily and personal injuries resulting from riding and examining appellee's motorcycle in consideration for appellant's examining and taking a demonstration ride with a view toward possible purchase. This language is unambiguous and is not amenable to a construction contrary to its plain and express terms. *Jackson v. Kight,* 117 Ga. App. 385, 387 (160 SE2d 668).

Appellant, relying on the language in "indemnity" cases, argues that the language of the agreement is too broad. He contends that since the agreement does not expressly incorporate appellee's negligence, this court should conclude the agreement does not indemnify appellee from a suit for its own negligence. *Rome Builders Supply v. Rome Kraft Co.,* 104 Ga. App. 488 (122 SE2d 133); *Bohannon v. Southern R. Co.,* supra; *Batson-Cook Co. v. Ga. Marble Setting Co.,* 112 Ga. App. 226, supra. Each of these cases dealt with an agreement to "hold harmless." None dealt with an agreement by the promisor not to sue upon an injury to the promisee resulting directly from the relationship between the two parties.

We will abide by our duty to uphold a contract between two adult entities fully capable of entering into that contract. We find nothing here to impinge upon the public interest. The granting of the summary judgment for appellee was not error.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED SEPTEMBER 15, 1975 — DECIDED OCTOBER 21, 1975—
REHEARING DENIED NOVEMBER 7, 1975 —

*Scheer & Elsner, Robert A. Elsner, Robert L. Coley,* for appellant.
*Savell, Williams, Cox & Angel, William S. Goodman, Edward L. Savell,* for appellee.