## 60988. RAYBESTOS-MANHATTAN, INC. v. FRIEDMAN.

DEEN, Presiding Judge.

This is an action for damages for breach of covenant in a lease agreement to keep the building in constant good condition and to repair and surrender "in as good repair as the time of the initial occupancy, excepting, however, ordinary wear and tear." The trial resulted in a verdict for the appellee landlord of some $38,000 actual

damages and $20,000 expenses of litigation, from which judgment Raybestos-Manhattan appeals.

1. At the time Friedman purchased the property the warehouse had not been fully constructed, but a 15-year lease had already been signed by the appellant tenant, for whose use the building was being constructed as a brakeshoe relining factory. After some 7 years, and in accordance with assignment provisions in the lease, appellant subleased to Kelly-Springfield Tire Co. as a tire recap factory. One of the issues underlying the lawsuit appears to be a dispute between the parties as to the quality of condition in which the premises should be returned at the end of the lease term. In addition to the lease covenants above quoted are provisions that the landlord make structural repairs necessary for safety and tenantability, including the roof and exterior walls, and that tenant is responsible for making all other repairs. Also, tenant has the right to make whatever alterations or improvements are deemed desirable for the conduct of tenant's business, all improvements to remain a part of the premises except trade fixtures which can be severed without damage to the property.

None of these covenants are unusual, and all have been the subject of judicial scrutiny at one time or another. The provision for returning the premises in as good condition as received, ordinary wear and tear excepted, was a rule of common law and is usually understood to mean no more or less when inserted in contemporary contracts. It includes that usual deterioration which results from the day to day use of the premises and from lapse of time. Scott v. Prazma, Wyo., 555 P2d 571, 579. It does not cover a deterioration resulting from negligence. International & G. N. R. R. Co. v. Young, 72 SW 68. It does, however, cover specific and substantial injuries sustained as the result of a structural defect, so that injury so caused is not chargeable to the tenant. Drouin v. Wilson, 67 A 825, 827 (Vt.). The ordinary use to be considered in determining whether the deterioration is chargeable to the landlord or tenant means the use understood by the parties to have been intended at the time of entering into the lease. Such a covenant, it has been held, "does not require him to make good such depreciation due to such wear and tear as is incident to the use for which premises were leased." Burdick Tire & Rubber Co. v. Heylmann, 138 NE 777 (6, 7, 8) (1923), and to the same effect see Kann v. Brooks, 101 NE 513, where it was held that, the intended use of the building being for a mill, beams which decayed not due to the negligence of the tenant but to its normal use as a mill were not damages for which recovery could be had. Clauses excepting ordinary wear and tear and clauses requiring the keeping of the building in good repair are to be construed together. Alabama

Freight Lines v. Stewart, 217 P2d 586. It is interesting that in this latter case certain items of damage are considered identical to some of those in the present case: for example, the court there found damage by trucks to the sides of the building resulted from negligence of the tenant, whereas damage resulting from the movement of large trucks over concrete slabs, a contemplated use, was a structural loss attributable to the landlord rather than a negligent one attributable to the tenant. Whether the damage to loading docks in the present case was negligent, and whether the deterioration of asphalt-covered parking areas was due to either a structural defect in building or to the ordinary depreciation by truck use rather than to negligence, were jury questions. It was also a jury question whether the ordinary use of the building by the sub-tenant Kelly-Springfield in its brakeshoe operations was a "like manufacturing use" to the tire recapping operations of the appellant.

The appellant tenant is correct in maintaining that *Zeeman Mfg. Co. v. L. R. Sams Co.,* 123 Ga. App. 99 (179 SE2d 552) (1970) must control in the trial of this case, both being actions for damages for return of property at the termination of leases containing comparable covenants on the part of each. "[It] was essential that the lessor prove the specific acts of waste or damage alleged and the reasonable cost of restoration in relation to the specific injuries shown." Id., p. 101. The owner is not entitled to replacement of a worn out structure without deduction for ordinary depreciation; "ordinary wear and tear" includes any usual deterioration from use of the premises during the lease period. Id., p. 102. There must be in the evidence a rational basis for computing the cost of restoration required to repair or replace damage chargeable to the lessee after crediting to it the normal wear and tear which is the lessor's obligation. Id., p. 103.

Applying the above principles we find that the court erroneously excluded the evidence sought to be presented in the first, ninth and fifteenth enumerations of error. As to the first, the witness Pierce attempted to testify that there were certain structural defects on the exterior of the building, allegedly caused by improper expansion of steel members within the wall, as well as other testimony relating to alleged sinking of the loading ramp. The court held that it was "going back too far to determine what occasioned cracks" observed by the witness at about the time of trial which was some five years after the termination of the lease. In the fifteenth enumeration, the defendant tenant then sought to prove the same point by means of the recall of an earlier witness, the engineer Chapman, for his own opinion evidence of structural defects. Chapman, although he had inspected the project in both 1969 and 1975, was not allowed to be recalled. (The

lease ran from about 1960 to 1975.) Again, as set out in the ninth enumeration, Chapman, an engineer of the sub-tenant, was not allowed to testify as to the useful life of various items allegedly damaged, such as the cyclone fence and the asphalt parking lot, apparently on the ground that the two corporations were not in like manufacturing circumstances. There was substantial evidence that they were: for example, both firms used large 18-wheel trucks, which it was contended was an anticipated use, and which was therefore ordinary wear and tear as to the asphalt and also the loading docks.

In Miller v. Belknap, 266 P2d 662, 665, it was pointed out that where there were lease provisions in which the tenant covenanted to maintain and repair the property, and also to return it in good condition, wear and tear due to reasonable use excepted, a fair construction of the lease is "that the defendants undertook to keep the property during the term, and to surrender it at the end of the term, in as good condition as when received, but not to make good any depreciation thereof due to reasonable use for the purposes contemplated by the lease. Hence, all evidence offered, bearing upon the state and condition of the property at the time defendants received possession, and at the time of its surrender, should have been admitted, as well as evidence of depreciation normally attending the contemplated use, and, as to property not returned or damaged beyond repair, its value at the time it was delivered to the defendants, less such reasonable depreciation as they might show." Id., p. 666.

Thus it was error to exclude evidence introduced for the purpose of showing what a reasonable anticipated use would be, and what reasonable depreciation might be expected on the items the repair of which was chargeable to the tenant, as well as evidence such as that excluded and complained of in the eleventh enumeration of error, for the purpose of demonstrating that the reasonably to be expected depreciation from ordinary wear and tear would be approximately the same for the two tenants.

2. Exemplary damages can never be allowed in cases arising on contracts. Code § 20-1405. Expenses of litigation may be allowed where the defendant has acted in bad faith, been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense. Code § 20-1404. Attorney fees under this section are, however, generally limited to ex delicto actions. In contract actions, the bad faith referred to has consistently been held by Georgia courts to refer to the conduct of the defendant out of which the cause of action arose, not to his conduct in defending the suit. *Traders Ins. Co. v. Mann,* 118 Ga. 381 (7) (45 SE 426) (1903); *Southern Bell Tel. &c. Co. v. C & S Realty Co.,* 141 Ga. App. 216 (233 SE2d 9) (1977), et cit. Mere failure to pay a

claim is not bad faith. As for stubborn litigiousness, none has been shown here except the refusal to pay the amount to which the plaintiff claims it was entitled. "Where there is no bad faith there must be something more than being put to the expense of a suit to authorize a plaintiff to claim attorneys' fees as part of his damages." *D. H. Overmyer Co. v. Nelson-Brantley Glass Co.,* 119 Ga. App. 599 (168 SE2d 176) (1969). Analysis of the testimony in support of damages for expenses of litigation is directed primarily to the time expenditure of the plaintiff's attorneys, one of whom stated that the case was taken on a contingent fee and that "it become apparent that we were being bombshelled with notices, with taking of depositions . . ." The expenses of litigation returned by the jury were in the amount of $20,000, the exact sum sought for attorney fees based on the time spent by the lawyers involved. We must reluctantly reverse. While it is true that numerous depositions were taken, and that some deponents, including the plaintiff, were deposed on multiple occasions, a motion for protective order under Code § 81A-126 (c), should have been made if it was felt the plaintiff was being subjected to unnecessary expense or annoyance. None having been urged as to the depositions appearing in this record, they cannot be considered a reason for the award of attorney fees. Accordingly, that part of the judgment awarding the additional sum as damages was error.

3. The court also erred, over the request for more time on the part of the attorneys for the defendant, in limiting the oral arguments to a half hour on each side in accordance with a local rule of the State Court of Fulton County. Code § 81-1007 provides that in all cases in the superior courts of this state other than felonies counsel shall be limited in their arguments to two hours on a side. Under the State Courts Act of 1970 (Ga. L. 1970, pp. 679 et seq.) it is specified: "The rules of practice and procedure which are applicable to the superior courts of this State shall be the rules which govern practice and procedure of the courts which come under the provisions of this Chapter." Code § 24-2107a. This, of course, applies to the State Court of Fulton County. Code § 81-1007 has been construed to mean as to those courts to which it applies as giving two hours to each side for argument, the trial court having no discretion to limit the argument below this length. *Henry & Hutchinson, Inc. v. Slack,* 91 Ga. App. 353 (2) (85 SE2d 620) (1955). Further, Code § 24-2112a provides that if any conflict arises between a local Act creating a court coming within the provisions of the 1970 Act and Code Chapter 24-21A the latter shall prevail. All the more would this be true of a conflict between the 1970 Act and a rule of court. The court should have granted the extra time on request, as complained in the eighth enumeration of error.

4. One of the defendant's earlier requests for production called

for "production of each and every writing regarding damages to the premises from 1960 to the present." "Writing" was so defined as to include photographs, following the language of Code § 81A-134 (a). Plaintiff responded, stating in part that the defendant had in its possession "each and every writing directed by plaintiff, his agents or attorneys, to defendant as to damages." The defendant had no knowledge of 44 photographs of the premises which the plaintiff did not produce, but which it offered in evidence on the trial of the case. Defendant moved to exclude these documents and assigns error on their allowance in evidence over its objection, but defendant made no motion for continuance, and plaintiff contends, on authority of *Crosswell v. Arten Const. Co.,* 152 Ga. App. 162 (262 SE2d 522) (1979) that not having done so it cannot now complain. However, Code § 81A-137 (d), dealing with sanctions stipulates that failure to act in accord with statutory provisions "may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by section 81A-126 (c)."

The plaintiff did not make a proper objection and did not produce the 44 photographs which were clearly within the purview of the request for production, nor did it move for a protective order. Sanctions, such as refusal to admit the exhibits in evidence, should clearly have been imposed. However, whether the failure of the defendant to specifically ask for a continuance to examine the photographs would, as contended, allow their admission in evidence without such time granted we need not decide, since the case is reversed on other grounds.

5. Testimony that the plaintiff was overheard to tell a third party that he wanted the fence replaced and a buffing and drying room placed on the premises by the defendant removed was excluded on the ground it was hearsay, and this is urged to be error on the ground that the statements were admissions against interest. If the latter, no proper foundation was laid to exhibit this fact. So far as appears the remarks were neither hearsay nor admissions against interest. Their exclusion is not a ground for a new trial.

6. The defendant counterclaimed for an overcharge in taxes which was admitted by the plaintiff and denominated a mistake in computing the fiscal year. Since the trial court directed a verdict for the defendant on this claim, and since the record fails to show any harm to the defendant in not allowing further pursuit of the matter by cross examination, no error appears. Grounds 13 and 14 are without merit.

7. Ground 10, not having been argued, is treated as abandoned. Grounds 6 and 7 show no cause for reversal. Grounds 4, 5 and 12 need

not be passed upon since the case is to be tried again.

*Judgment reversed. Birdsong and Sognier, JJ., concur.*

ARGUED NOVEMBER 5, 1980 — DECIDED JANUARY 6, 1981.

*Shane M. Geeter, W. Kent Bishop,* for appellant.
*Alford Wall,* for appellee.