## 68348. HALL v. SKATE ESCAPE, LTD.

QUILLIAN, Presiding Judge.

Plaintiff, Mary Hall, appeals from the grant of summary judgment to the defendant, Skate Escape, Ltd. Skate Escape operates a roller skate and bicycle rental business located near Piedmont Park in Atlanta. On June 15, 1980, plaintiff Hall, intending to go roller skating with friends, rented from Skate Escape a pair of roller skates. According to plaintiff, she fell almost immediately after putting on the roller skates and upon examination she found one of the axles bent. She was hospitalized with a broken ankle and missed a period of time from work. She brought this action for damages relating to the injury.

The rental contract signed by plaintiff contained the following wording: "Customer holds lessor harmless and hereby agrees to assume the defense of the lessor against any and all claims by any person or persons whomsoever, involving liability for bodily injury including death and property damage, arising out of or incident to the use of bikes and/or skates regardless of fault of Customer, Lessor or any other party. BY HIS ACCEPTANCE AND REMOVAL OF BIKES AND/OR SKATES FROM LESSOR'S LOCATION, CUSTOMER AGREES BIKES AND/OR SKATES ARE IN ACCEPTABLE OPERATING CONDITION, AND THAT LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, IN CONNECTION THEREWITH." Plaintiff's signature appears following the wording: "I have read the terms and conditions below and agree hereto." Hall admitted that she read the agreement but it was her understanding of the wording that she was releasing and holding harmless the lessor for any injury which she would cause to a third person arising from the use of the skates. Defendant argued that the agreement was a waiver of any claim against defendant as a result of injuries she might suffer from the use of its equipment. Plaintiff appeals from the grant of summary judgment to defendant. *Held*:

This is a contract of bailment for hire. As a general rule, except for statutes, the bailment contract governs the rights, duties, and liabilities of a bailor and bailee as between themselves. See generally 8 CJS 374, Bailments, § 22 (a). And, it is settled contract law that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and any impairment of that right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition, and not left to speculation. *Brown v. Five Points Parking Center*, 121 Ga. App. 819, 821 (175 SE2d 901); *Porubiansky v. Emory Univ.*, 156 Ga. App. 602, 603 (275 SE2d 163), affd. 248 Ga. 391.

In Georgia, a public duty is owed by bailors to bailees. Under OCGA § 44-12-63 (formerly Code Ann. § 12-204) a bailor is obligated:

(1) not to deprive the bailee of the use and enjoyment of the chattel during the bailment, (2) to keep the bailed property in suitable order and repair for the purpose of the bailment, and (3) "To warrant the right of possession and that the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired." Thus, this court has held that a bailor warrants the soundness, suitability, and fitness of a bailed product for the intended use, and is liable for any injury or damage which results from a latent defect of which the bailee has no knowledge and the consequences of which he could not avoid through the exercise of ordinary care. *Parker v. Loving & Co.*, 13 Ga. App. 284, 286 (79 SE 77); *Queen v. Patent Scaffolding Co.*, 46 Ga. App. 364, 368 (167 SE 789); see also 8 CJS 380, Bailments, § 25 (a); Annot. 46 ALR2d 404: Bailor — Liability for Injury § 13. In every bailment the bailor has an obligation to refrain from knowingly delivering to a bailee any chattel with a condition of which the bailee is ignorant, that is likely to imperil the life or property of the bailee. See generally 8 AmJur2d 888, Bailments, § 156. Thus, it is essential that a bailor use ordinary care to inspect the bailed article before delivery to ascertain if it was in a reasonably safe condition to avoid injury to another. *Yale & Towne, Inc. v. Sharpe*, 118 Ga. App. 480, 491 (6) (164 SE2d 318); 9 Williston on Contracts (3d ed.) 919-920, § 1041; 8 CJS 384, Bailments, § 25. Accordingly, even though a bailor warrants that a chattel is free from latent defects, impliedly warrants that the chattel is sound, suitable, and fit for the purpose of the intended use, has a duty to keep the bailed property in repair for the purpose of the bailment, and should inspect the chattel before delivery to the bailee to ascertain if it is in reasonably safe condition to avoid injury to another — particularly where the chattel is of a type which could be dangerous to life, limb, or property — the parties are free to contract and may by express agreement enlarge, abridge, qualify, or supersede obligations that otherwise would arise from the bailment by implication of law — so long as the contract does not violate statutory law or contravene public policy — and, so long as such restrictions are expressed in clear and unambiguous language. See generally 8 AmJur2d 868, Bailments, § 139; *Brown v. Five Points Parking Center*, 121 Ga. App. 819, 821, supra; *Porubiansky v. Emory Univ.*, 156 Ga. App. 602, 603, supra.

In Georgia, the general rule is that a party may exempt himself by contract from liability to the other party for injuries caused by his negligence, and the agreement is not void for contravening public policy. *Hawes v. Central of Ga. R. Co.*, 117 Ga. App. 771, 772 (162 SE2d 14); *Mossie v. Pilgrim Self-Service &c.*, 150 Ga. App. 715, 716 (258 SE2d 548); *Carrion v. Smokey, Inc.*, 164 Ga. App. 790 (298 SE2d 584).

Exculpatory clauses in contracts, in their broadest sense, may be

categorized as covenants not to sue, releases, and indemnification agreements. See *Cash v. Street & Trail, Inc.*, 136 Ga. App. 462, 464 (221 SE2d 640). "In its purest sense, a release does not relate to a future or contingent claim. Where a 'release' speaks in terms of a future or contingent claim [cits.] it is more accurately denominated 'a covenant not to sue.' [Cits.] Thus, a covenant not to sue is appropriately described as an agreement not to sue, given in exchange for lawful consideration . . . On the other hand, a 'release' must come after a cause of action has arisen . . . 'Indemnity' has been defined as 'the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit.' [Cit.] This is traditionally a covenant by the indemnitor to indemnify or 'save harmless' the indemnitee from claims of third parties . . . The tendency has been not to sustain an indemnity agreement against the indemnitee's own negligence unless the agreement spells out the indemnitee's obligation in unequivocal terms." Id. at 464-465.

The exculpatory paragraph in the instant case can be divided into two sections, the first containing the "hold harmless" provision, and the second which relates to the condition of the bailed property and has a disclaimer as to warranties. We will address each seriatim. The first "hold harmless" section lacks clarity and certainty, is vague and ambiguous, and its meaning and intent is obscure — if not unintelligible. It probably was intended to be an indemnification agreement as it purports to require the "customer" to hold lessor harmless by agreeing to defend the lessor against all claims — apparently presented by third parties. See *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381 (3) (215 SE2d 10); *Batson-Cook Co. v. Poteat*, 147 Ga. App. 506 (249 SE2d 319). It does not contain language which purports to prohibit the customer from bringing suit for negligence of the defendant. We find none of the requisite wording usually included within a covenant not to sue. See *Moore v. Smith*, 78 Ga. App. 49 (1) (50 SE2d 219); *Doster v. C. V. Nalley, Inc.*, 95 Ga. App. 862 (2) (99 SE2d 432); *Gordon County v. Cochran*, 103 Ga. App. 412, 418 (119 SE2d 368); *Otis v. Wren Mobile Homes*, 111 Ga. App. 649, 651 (143 SE2d 8); *Cash v. Street & Trail, Inc.*, 136 Ga. App. 462, 463, supra; *Smallwood v. Bickers*, 139 Ga. App. 720, 723 (229 SE2d 525). As held above, exculpatory clauses must be clear and unambiguous, they must be specific in what they purport to cover, and any ambiguity will be construed against the drafter of the instrument. *Oak Creek Dev. Corp. v. Hartline-Thomas, Inc.*, 138 Ga. App. 83, 85 (225 SE2d 515); *Gobbi v. Hurt*, 150 Ga. App. 60, 61 (256 SE2d 664); *Wilner's, Inc. v. Fine*, 153 Ga. App. 591, 594 (266 SE2d 278). The reason why exculpatory clauses should be explicit, prominent, clear and unambiguous, is that such an agreement amounts to a waiver of substantial rights,

could be an accord and satisfaction of possible future claims, and requires a meeting of the minds on the subject matter. See *Henderson v. Garbutt*, 121 Ga. App. 291, 292 (173 SE2d 445). And, although Article 2 of the Uniform Commercial Code is not applicable to lease contracts unless they are analogous to a sale (*Redfern Meats v. Hertz, Corp.*, 134 Ga. App. 381, 389, supra; *Dixie Groceries v. Albany Business Machines*, 156 Ga. App. 36 (1) (274 SE2d 81); Annot. 68 ALR2d 850, § 8, Lease or Hire — Warranties), the reasoning behind OCGA § 11-2-316 and bailments for hire when there is an exclusion or modification of warranties should be the same, i.e., inspection and conspicuous language. In sum, we do not find a waiver by the bailee of the right to bring an action against the bailor for injuries sustained by the bailee because of defects in the bailed chattel.

Turning to the last sentence of the exculpatory paragraph of the bailment contract, it stated that the customer "by his acceptance and removal" of the skates agreed that they "are in acceptable operating condition, and that lessor makes no warranties, express or implied, in connection therewith." These expressions contravene the Code requirement that the bailor is "[t]o warrant . . . the thing bailed is free from any secret fault rendering it unfit for the purposes for which it is hired." OCGA § 44-12-63 (3). This portion of the contract is void.

Generally, neither presence nor absence of negligence should be summarily adjudicated unless no other conclusion is permissible, and they should be resolved by the trier of fact except in plain and indisputable cases. *Tanner v. Ayer*, 150 Ga. App. 709, 710 (258 SE2d 545). Also, in a motion for summary judgment by a defendant, the burden is on the movant to affirmatively negative plaintiff's claim and show plaintiff is not entitled to recover under any theory of the case. *First of Ga. Ins. Co. v. Josey*, 129 Ga. App. 14, 15 (3) (a) (198 SE2d 381). Defendant has failed to establish that plaintiff cannot recover under any theory of her pleadings. Hence, the trial court erred in granting summary judgment to defendant.

*Judgment reversed. Birdsong and Carley, JJ., concur.*

DECIDED JUNE 8, 1984.

*Charles E. Muskett*, for appellant.
*Dennis M. Hall*, for appellee.