## 70043. MTA BROKERAGE CONSULTANTS, INC. v. FINKLE.
(330 SE2d 419)

BANKE, Chief Judge.

Appellee Steven Finkle, formerly an officer and shareholder of appellant MTA Brokerage Consultants, Inc., sued Great American Life Insurance Company to collect a commission allegedly earned on the sale of a life insurance policy. Great American filed a third-party complaint against MTA, based on its having paid the commission in question to MTA, whereupon MTA counterclaimed against Finkle for a declaratory judgment to the effect that Finkle was not entitled to the money. Finkle then filed a claim against MTA for the funds in question.

The original defendant, Great American Life Insurance Company, was ultimately dismissed from the proceedings on motion for judgment on the pleadings. The remaining claims were tried before a jury, which returned a verdict in favor of Finkle for $14,641.25, the amount of the commission. On appeal, MTA enumerates as error the trial court's denial of its motions for directed verdict and for judgment notwithstanding the verdict, contending that a verdict in its favor was demanded under the terms of a "covenant not to sue" which Finkle had executed.

The jury heard evidence concerning the facts and circumstances surrounding both the execution of the covenant not to sue and the sale of the policy which generated the commission at issue. Customarily, when one of the officers personally sold a policy of insurance, that officer was entitled to the entire sales commission. The life insurance policy at issue in this case was a Great American policy providing $5 million in coverage on the life of Harold Gaines. Because the policy was so large, Finkle and MTA, which had previously been appointed as a "managing general agent" for Great American and had in turn appointed Finkle as an insurance agent for Great American, entered into what is known as a "single case agreement" on March 9, 1983. This agreement required Finkle to look to MTA rather than to Great American for payment of any commission due on the Gaines policy.

Subsequently, Finkle decided to sever his business relationship with MTA; and on April 14, 1983, he and MTA's president, Jack Aiken, executed separate covenants not to sue each other for any existing claim whatsoever. Specifically, Finkle agreed by the terms of his covenant "not to ever sue MTA . . ., for or in respect of all claims, causes of action, lawsuits, debts, dues, sums of money, accounts, covenants, contracts, liabilities, controversies, agreements, promises, trespasses, damages, judgments, executions, costs, attorney's fees, interest and demands of any nature whatsoever, past or present which Finkle has or ever has had against MTA Brokerage Consultants, Inc., . . . by

reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of the convenant . . ." The Gaines life insurance policy had not been sold at this time, nor was it discussed at the meeting between Finkle and Aiken. After further negotiations on Finkle's part, the sale subsequently went through; and Great American sent a check to MTA for the commission. The money has since been held in escrow by MTA's attorney. The sole issue presented by this appeal is whether the covenant not to sue covers Finkle's claim against MTA for the commission. MTA argues that even though the policy had not been sold and the commission had not been earned on the date the covenant was executed, it nevertheless applies to the claim due to the existence of the single case agreement requiring Finkle to look to MTA rather than Great American for payment of the commission. Finkle argues that since the policy was not sold until after the execution of the covenant not to sue, it does not apply to the commission claim. Alternatively, he contends that the covenant is ambiguous and that its interpretation was a proper matter for jury resolution. *Held*:

"In its purest sense a release does not relate to a future or contingent claim. Where a 'release' speaks in terms of a future or contingent claim [cits.], it is more accurately denominated 'a covenant not to sue.' [Cit.] Thus, a covenant not to sue is appropriately described as an agreement not to sue, given in exchange for lawful consideration. At the time, such an agreement is given, there is no claim in existence to be released. It speaks of the future, not of the present or past. Since no liability exists, none can be released. [Cits.] On the other hand, a 'release' must come after a cause of action has arisen." *Cash v. Street & Trail, Inc.*, 136 Ga. App. 462, 464 (221 SE2d 640) (1975).

Although denominated a convenant not to sue by the drafter, we conclude that the document in fact constitutes a release. By its terms, the agreement applied to any "claim, cause or thing" existing from the beginning of the world to the date of the covenant. Thus by its express and unambiguous terms, claims arising subsequent to its execution were not covered. Accord *Eatonton Oil &c. Co. v. Greene County*, 53 Ga. App. 145 (2) (185 SE 296) (1935). Clearly, Finkle had no claim to the commission until the Gaines policy was sold. The claim consequently arose subsequent to the execution of the so-called covenant not to sue and was not barred by it as a matter of law. Compare *Klein v. John Hancock Mut. Life Ins. Co.*, 683 F2d 358 (11th Cir. 1982). It follows that the jury's verdict was authorized by the evidence.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED APRIL 3, 1985 —
REHEARING DENIED APRIL 29, 1985.

*Stanton J. Shapiro, Sharon R. Clutteur*, for appellant.
*William B. Lyons*, for appellee.