A90A1105. BORG-WARNER INSURANCE FINANCE CORPORATION v. EXECUTIVE PARK VENTURES et al.
(400 SE2d 340)

CARLEY, Chief Judge.

A fire partially destroyed commercial offices that were owned by appellee-plaintiff Executive Park Ventures and leased to appellant-defendant Borg-Warner Insurance Finance Corporation. Alleging that one of appellant's employees or agents had negligently set the fire, appellee initiated this action for damages. Appellant answered and asserted, among its other defenses, the applicability of the following lease provision: "[Appellee] and [appellant] shall hold each other (including its employees, customers, invitees, licensees and others) harmless from and against any and all liability, damage, injury, action or causes of action whatsoever suffered or occasioned upon the premises or arising out of the operation, conduct and use of the premises." After a period of discovery, cross-motions for summary judgment were filed as to the issue of whether this lease provision was a bar to appellee's suit against appellant. The trial court denied appellant's motion and granted summary judgment in favor of appellee. Appellant appeals from this order of the trial court.

As a general rule, a party can secure an enforceable contractual waiver of liability for the consequences of his own ordinary negligence if this intention is clearly and unequivocally expressed and if such a waiver is not otherwise prohibited by statute. *Batson-Cook Co. v. Ga. Marble Setting Co.*, 112 Ga. App. 226 (144 SE2d 547) (1965). Arguably, the instant lease provision does not clearly and unequivocally express the mutual intent of appellee and appellant to waive, as against each other, liability for the consequences of their own respective negligent acts or omissions. See generally *Hall v. Skate Escape, Ltd.*, 171 Ga. App. 178 (319 SE2d 67) (1984).

However, even assuming that the provision could otherwise be construed as a mutual waiver of liability for the consequences of appellee's and appellant's respective negligent acts or omissions, the provision would nevertheless be unenforceable as a bar to the instant action. OCGA § 13-8-2 (b) provides, in relevant part, that, insofar as certain specified contracts are concerned, a provision "purporting to

indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable. . . ." Leases are among those contracts that are included within the ambit of the public policy prohibition established by OCGA § 13-8-2 (b). *Country Club Apts. v. Scott*, 246 Ga. 443 (271 SE2d 841) (1980). Since appellee seeks to recover for property damages allegedly resulting from the sole negligence of one of appellant's agents or employees, it follows that, within the context of the instant action, a provision in the lease whereby appellee purported to waive liability for property damages allegedly resulting from the sole negligence of appellant's agents or employees would be void and unenforceable. See *National Candy Wholesalers v. Chipurnoi, Inc.*, 180 Ga. App. 664 (350 SE2d 303) (1986). Accordingly, the trial court correctly denied appellant's motion for summary judgment and granted summary judgment in favor of appellee.

Even under the narrow construction of OCGA § 13-8-2 (b) advanced by the dissent, the trial court's rulings were nevertheless correct. As the dissent notes, this court's decision in *Barnes v. Pearman*, 163 Ga. App. 790 (294 SE2d 619) (1982) was affirmed by the Supreme Court in 250 Ga. 628 (301 SE2d 647) (1983). The dissent would distinguish the *Barnes* decision on the ground that "the lease containing the exculpatory clause at issue [therein] involved 'construction, alteration, repair, or maintenance,' in that it specifically required the landlord to perform electrical modifications to the premises, which modifications were alleged to have caused the injury forming the basis for the suit." It is clear, however, that the lease containing the exculpatory clause at issue in the instant case *likewise* involves "construction, alteration, repair, or maintenance,"' in that it specifically requires appellant to "take good care of the Premises and its fixtures and permit no waste, except normal wear and tear," and it is the negligent breach of that obligation to repair or maintain the premises which forms the basis for appellee's suit. "This clause and similarly worded clauses contained in lease contracts have been construed by the Georgia courts a number of times, and it is now settled that where a lease contract containing such a clause gives to the lessee exclusive possession and control of the premises, only such casualties as amount in law to accidents or acts of God will relieve the lessee of liability to repair when the premises are damaged during the term of the lease. [Cits.] This means, of course, that the lessee is liable to the lessor if he returns the premises in a damaged condition, if such damage was caused by the default or negligence of the lessee." *Taylor v. R.O.A. Motors*, 114 Ga. App. 671, 681 (6) (152 SE2d 631) (1966). See also *Raybestos-Manhattan v. Friedman*, 156 Ga. App. 880, 881 (1) (275

SE2d 817) (1981); *Martin v. Medlin*, 81 Ga. App. 602, 604 (a) (59 SE2d 519) (1950). Accordingly, the *Barnes* decision is *not* distinguishable as the dissent contends, and the Supreme Court's affirmance of that decision *must* necessarily be read as supporting the extension of OCGA § 13-8-2 (b) to the instant lease.

*Judgment affirmed. McMurray, P. J., Banke, P. J., Birdsong, Pope and Cooper, JJ., concur. Deen, P. J., concurs in the judgment only. Sognier and Beasley, JJ., dissent.*

SOGNIER, Judge, dissenting.

I respectfully dissent. Although I fully understand the origin of the majority's reasoning concerning this subject of much confusion in our courts, I cannot agree with its conclusion that OCGA § 13-8-2 (b) applies to the lease in question.

OCGA § 13-8-2 (b) provides in its entirety that "[a] covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer."

The plain language of the statute "creates two threshold conditions: that the exculpatory clause purports to protect the indemnitee against the consequences of his sole negligence and that the agreement pertain to the maintenance or construction of a building." *Smith v. Seaboard Coast Line R. Co.*, 639 F2d 1235, 1242 (5th Cir. 1981) (construing predecessor statute to OCGA § 13-8-2 (b)). Moreover, because the statute changes the common law rule permitting parties to contract for exculpation in general, it must be strictly construed. Id. In *Camp Concrete Prods. v. Central of Ga. R. Co.*, 134 Ga. App. 537, 539 (215 SE2d 299) (1975) (one judge concurring in judgment only), this court specifically held that the predecessor statute to OCGA § 13-8-2 (b) (Ga. Code Ann. § 20-504), was applicable only to cases where the second threshold condition was met. In *Frazer v. City of Albany*, 245 Ga. 399, 401-402 (265 SE2d 581) (1980), the Supreme Court, citing with approval *Camp Concrete Prods.*, held that Ga. Code Ann. § 20-504 was applicable to a lease which involved construction of a civic center, and in *Country Club Apts. v. Scott*, 246 Ga. 443 (271 SE2d 841) (1980), the court cited *Frazer* for the proposition that OCGA § 13-8-2 (b) was "applicable to exculpatory clauses in lease

contracts." *Country Club Apts.*, supra at 444.

It is plain, not only from *Frazer* but from the statute itself, that OCGA § 13-8-2 (b) *is* applicable to lease contracts. The fact that the contract is a lease, however, is not *sufficient* by itself to bring the contract under the plain language of the statute. The contract also must be a lease which meets the two threshold requirements, both of which are clearly expressed in the statute and thus need no judicial construction. "It is well established that where the language of an act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden. [Cit.]" *Georgia Farm &c. Ins. v. Jah*, 193 Ga. App. 169, 171 (387 SE2d 447) (1989).

Moreover, "[i]t is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (Citations and punctuation omitted.) *Hoffman v. Doe*, 191 Ga. App. 319, 321 (381 SE2d 546) (1989). Consequently, even assuming that OCGA § 13-8-2 (b) is susceptible of construction, the majority's construction is flawed because it renders superfluous the legislature's later expression of public policy in OCGA § 44-7-2 (b), a statute in pari materia, which must be considered in arriving at the proper construction of OCGA § 13-8-2 (b). See generally *Fayette County &c. Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 726 (2) (368 SE2d 326) (1988). OCGA § 44-7-2 (b), which provides that "a landlord or a tenant may not waive, assign, transfer, or otherwise avoid any of the rights, duties, or remedies contained in" certain Code sections in any lease "for the use or rental of real property as a dwelling place," would be totally unnecessary if OCGA § 13-8-2 (b) applied to all lease contracts.

I do not believe the Supreme Court failed to recognize in *Frazer* that the public policy expressed in OCGA § 13-8-2 (b) applied only to contracts dealing with the construction, alteration, repair or maintenance of buildings, particularly as the opinion cited with approval *Camp Concrete Prods.*, which specifically so held. Nor do I believe that *Country Club Apts.* holds otherwise, particularly as *Camp Concrete Prods.* was not overruled therein and the opinion correctly recognized that OCGA § 44-7-2 governs residential leases such as the one at issue there. Because the lease involved in *Country Club Apts.* was for residential premises, no construction of OCGA § 13-8-2 (b) was necessary to the decision. Thus, I view statements in *Country Club Apts.* regarding OCGA § 13-8-2 (b) as obiter dicta. While helpful and interesting as background and history of the State's public policy on the subject, such statements simply cannot serve as a holding that OCGA § 13-8-2 (b) applies to every lease contract, even if the lease does not pertain to the construction, alteration, repair, or maintenance of a building.

"The apparent purpose of [OCGA § 13-8-2 (b)] is to prevent a building contractor, subcontractor, or owner from contracting away liability for accidents caused solely by his negligence, whether during the construction of the building or after the structure is completed and occupied." *Smith*, supra at 1242. Although the policy reasons behind OCGA § 13-8-2 (b) were not stated and no clear legislative history is available, it would seem that construction contracts were singled out because of the possibility of hidden, or latent, defects of an extremely dangerous nature and not ordinarily detectable by a lay person. The enactment in other states of legislation similar to OCGA § 44-7-2 (b) is generally based on a desire to protect residential tenants from landlords because of the disparity in their bargaining positions, which can lead to contracts of adhesion, and on the recognition of the fundamental nature of the shelter requirement. See generally "Indemnity and Exculpation: Circle of Confusion In The Courts." 33 Emory L. J. 135, 155-156 (1984).

The problem is that subsequent to the Supreme Court's decision in *Country Club Apts.*, the purpose of OCGA § 13-8-2 (b) was obscured as decisions involving it became broader. In *Burson v. Copeland*, 160 Ga. App. 481, 482 (2) (287 SE2d 386) (1981), this court, citing *Country Club Apts.*, extended OCGA § 13-8-2 (b) to cover a commercial lease which bore no relation to the threshold requirement in the statute that it pertain to construction. Although *Barnes v. Pearman*, 163 Ga. App. 790 (294 SE2d 619) (1982), aff'd 250 Ga. 628 (301 SE2d 647) (1983), applied OCGA § 13-8-2 (b), the lease containing the exculpatory clause at issue involved "construction, alteration, repair, or maintenance," in that it specifically required the landlord to perform electrical modifications to the premises, which modifications were alleged to have caused the injury forming the basis for the suit. Thus the Supreme Court's summary affirmance of this court's holding that OCGA § 13-8-2 (b) applied cannot necessarily be read as supporting the extension of OCGA § 13-8-2 (b) to all leases. However, in *National Candy Wholesalers v. Chipurnoi, Inc.*, 180 Ga. App. 664 (350 SE2d 303) (1986), by interpreting the statement in *Country Club Apts.* as an extension of the policy expressed in OCGA § 13-8-2 (b) to *all* leases, this court again disregarded the plain language of the statute. *Chipurnoi*, supra, misread *Country Club Apts.*, and further compounded its misinterpretation by failing to recognize that *Country Club Apts.* was citing OCGA § 44-7-2, and not OCGA § 13-8-2 (b), when it referred with approval to the policy that a " ' . . . tenant may not . . . avoid in any contract . . . any of the rights or duties or remedies . . . relating to the duties of a landlord.' " *Chipurnoi*, supra at 666. Unfortunately, the majority now cites *Chipurnoi* as authority for its holding here.

In my view, it is time to clear away the confusion and return to

the obvious plain meaning and purpose of OCGA § 13-8-2 (b). This case is an excellent illustration of how the laudable purposes of OCGA §§ 13-8-2 (b) and 44-7-2 (b) are ill served by extending their protections indiscriminately. Here, it is obvious that the contracting parties both had substantial bargaining power and negotiated the clause in question to accommodate their various business purposes. Governmental protection is unnecessary in such a case. Since *Burson* and *Chipurnoi*, supra, did not involve leases which met the two threshold requirements in OCGA § 13-8-2 (b), I would overrule those two cases.

"The 'freedom of individuals to contract' is part of the basic liberties enjoyed by the citizens of this state and should not be interfered with in the absence of clear necessity. So important is this freedom that our legislature is prohibited from passing laws impairing the obligation of contract. [Cit.]" *National Consultants v. Burt*, 186 Ga. App. 27, 32 (366 SE2d 344) (1988). I would follow the venerable rule, as stated in *Phenix Ins. Co. v. Clay*, 101 Ga. 331, 332 (28 SE 853) (1897), that "[i]t is well settled that contracts will not be avoided by the courts as against public policy, except 'where the case is free from doubt and where an injury to the public interest clearly appears.' " Because "all people who are capable of contracting shall be extended the full freedom of doing so if they do not in some manner violate the public policy of this state," *Cash v. Street & Trail*, 136 Ga. App. 462, 466 (221 SE2d 640) (1975), and I do not find the exculpatory clause in this commercial lease offensive to the public policy of this state expressed in either OCGA § 13-8-2 (b) or OCGA § 44-7-2 (b), I would reverse the judgment below.

I am authorized to state that Judge Beasley joins in this dissent.

DECIDED NOVEMBER 21, 1990 —
REHEARING DENIED DECEMBER 12, 1990 —

*Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb, William E. Zschunke*, for appellant.
*R. Wayne Thorpe, Alston & Bird, Richard R. Hays, Smith, Gambrell & Russell, Thomas E. McCarter*, for appellees.